**Ralph CIFARELLI, Plaintiff,**

v.

**VILLAGE OF BABYLON,
et al., Defendants.**

**No. CV 93–3808.**

United States District Court,
E.D. New York.

Aug. 10, 1995.

Schapiro & Reich by Steven M. Schapiro, Lindenhurst, NY, for plaintiff.

Glass & Glass by Gerald Glass, Babylon, NY, for defendants.

## MEMORANDUM & ORDER

WEXLER, District Judge.

Plaintiff Ralph Cifarelli ("plaintiff" or "Cifarelli") brought the above-referenced civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the Village of Babylon (the "Village"), the Village's Board of Trustees (the "Board"), and the individual members of the

Board [1] (collectively, "defendants") [2] deprived him of a property interest in a tenured position without due process of law and in violation of his right to equal protection of the law. Presently before the Court is defendants' motion, pursuant to Fed.R.Civ.P. 56(c), for summary judgment and dismissal of the claims.

## I. *FACTS AND BACKGROUND*

Plaintiff was employed in March 1989 by the Village in the full-time civil service position of Building Inspector (the "full-time position"). *See* Statement of Facts in Supp. of Summ.J.Mot. ("Defs.' 3(g) Statement"), ¶ 2; *see also* Local Rule 3(g) ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."); *see generally* Affirmation of Perry S. Reich [in Opp'n to the Summ.J.Mot.] ("Pl.'s 3(g) Statement"). That employment ended on August 10, 1993 after the Board resolved to abolish the full-time position and terminate plaintiff's employment. Defs.' 3(g) Statement, ¶ 3. At the time of his termination, plaintiff's annual salary was $30,100. Notice of Motion ("NOM"), Exh. C.

Plaintiff alleges that he was first informed of the impending termination by Mayor E. Donald Conroy ("Conroy") of the Village when he was summoned to Conroy's office a "few hours" prior to the Board meeting on August 10, 1993. Pl.'s 3(g) Statement, ¶ 1. Defendants agree that Conroy notified Cifarelli of the looming employment action, *see* Affidavit of E. Donald Conroy ("Conroy Aff."), ¶ 3, but do not specify at what point in time that notification took place. There is no allegation from plaintiff, in his pleading or elsewhere, that he requested a hearing at any time before or after his termination.

Defendants assert that the full-time position was abolished for "fiscal reasons." Conroy Aff., ¶ 3.

In addition to abolishing the full-time position at the August 10, 1993 meeting, the Board also resolved to create a part-time position of Building Inspector (the "part-time position") and to appoint Steven Fellman ("Fellman") thereto. NOM, Exh. A (minutes of the August 10, 1993 meeting of the Board). Fellman, employed by the Village as a Site Plan Reviewer at the time of the meeting, was appointed to the part-time position by the Board, to be held in conjunction with his existing position, "at an increase of $5,000." NOM, Exh. A.

On August 20, 1993, ten days after his termination, Cifarelli brought this action against defendants by filing a summons and complaint (the "Complaint").

Defendants contend that, prior to adopting the resolution, the Board was informed by the Suffolk County Department of Civil Service (the "Department") that it was "free to hire whomever it wished to the part time position." *See* NOM, Exh. B (affidavit of Mary Beth Wright, secretary to Conroy during the time in question, recounting her telephone conversation with Gino DeStefano of the Department). Indeed, the Department approved the resolutions.

Nonetheless, by letter dated September 27, 1993, the Department advised the Village that it had "inadvertently approved the employment of Steven Fellman" and that the part-time position "must be offered" to Cifarelli. The Village complied, retracting the offer made to Fellman, placing Cifarelli's name on a one-name preferred list for the part-time position, and offering the part-time position to Cifarelli, by letter dated September 30, 1993 (the "September 30 letter"). In the Department's view, however, the September 30 letter was unacceptable; by letter dated October 22, 1993, the Department advised the Village that the September 30 letter "did not contain sufficient information for Mr. Cifarelli to make an informed decision regarding th[e] job offer." Specifically, the Department instructed that the offer must include, *inter alia*, a statement informing Cifarelli that he "must respond in writing to the Village within ten (10) business days of

---

1. The members of the Board, sued in their official and individual capacities, are: E. Donald Conroy, Diane Gilmore, Ralph Scordino, Kevin Muldowney, and Ramon Accettella.

2. Claims pled by plaintiff against the Suffolk County Department of Civil Service were withdrawn and dismissed, by stipulation and order dated October 27, 1994.

the date of the certified letter" extending the offer.

The Village complied, sending plaintiff a second letter, dated October 25, 1993 (the "October 25 letter"), which renewed the offer and contained notice of the ten-day deadline for acceptance. By letter dated November 9, 1993, the Village advised plaintiff that his failure to respond to the offer was deemed a declination of his right to the part-time position.

Subsequently, plaintiff disputed the ten-day deadline as unduly harsh and, by letter dated November 16, 1993 (the "November 16 letter"), purported to accept the part-time position. In response, the Village advised plaintiff, by letter dated November 18, 1993, that it would abide by the decision of the Department regarding whether plaintiff's acceptance was timely. The Department advised Cifarelli, by letter dated November 23, 1993, that he "had more than a sufficient amount of time ... to accept the part-time position."

The Complaint advances two sets of claims: (1) that plaintiff was deprived of property interests in the full-time position and the part-time position without due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, Section 6 of the New York State Constitution; and (2) that plaintiff was deprived of his right to equal protection of the laws as guaranteed by the Fourteenth Amendment and Article 1, Section 11 of the New York State Constitution. As a ground for the equal protection claims, plaintiff asserts that defendants' failure to provide sufficient notice of termination and an impartial pre-termination hearing was arbitrary, unreasonable and capricious.

Defendants contend that summary judgment should be granted and that the Complaint should be dismissed. They argue that plaintiff does not have a constitutionally protected interest in continued employment in the full-time position because the full-time position was abolished in accordance with state law. In addition, although defendants concede that plaintiff had a property interest in the part-time position, they argue that they did not violate plaintiff's rights therein.

In the alternative, defendants contend that summary judgment should be granted in favor of the individual members of the Board under the doctrine of qualified immunity.

In opposition to defendants' motion, plaintiff contends that the Board abolished the full-time position in order to rid the Village of Cifarelli and replace him with Fellman, and that defendants' stated reason—economy—was but a sham and pretext. Plaintiff asserts that the questions of whether the Board's stated reason was pretextual and whether the Village gave Cifarelli sufficient time to accept the part-time position should be answered by a jury.

## II. *DISCUSSION*

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See id.* at 322, 106 S.Ct. at 2552. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court is required to resolve all

ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## A. Procedural Due Process

### 1. The Full–Time Position

■ Cifarelli claims deprivation of property without due process because he was discharged from the full-time position without notice and a hearing. Where a governmental employee is found to have a "property interest" in continuation of his or her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded notice and, typically, a pre-termination hearing. *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Dwyer v. Regan*, 777 F.2d 825 (2d Cir.1985), *modified*, 793 F.2d 457 (2d Cir.1986)).

■ "Property interests in employment 'are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491 and *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709) (internal quotations omitted). Under New York law "a person holding a position by permanent appointment in the competitive class of the classified civil service," N.Y.Civ.Serv.Law § 75(1)(a) (McKinney 1983), may "not be removed ... except for incompetency or misconduct," *id.* § 75(1). The United States Court of Appeals for the Second Circuit has held that governmental employees whose positions are subject to N.Y.Civ.Serv.Law § 75(1) possess "an 'enforceable expectation of continued public employment,' [constituting] a property interest ... protected by the due process clause." *Berns v. Civil Serv. Comm'n*, 537 F.2d 714, 716 (2d Cir.1976) (quoting *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976)). Cifarelli alleges in the Complaint that he was "a permanent tenured employee" in the "competitive class, under New York Civil Service Law." Complaint, ¶ 9. Based on this allegation, the Court determines—due in part to the fact that defendants do not dispute the allegation—that plaintiff had a property interest in continued employment in the full-time position that was protected by the Due Process Clause.

■ Where it has been determined that Due Process Clause applies, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To answer that question, the Court must look to federal law. *See Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492–93; *Dwyer*, 777 F.2d at 831.

■ In order "[t]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Adequacy of the process can be determined by weighing three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 783–84 (2d Cir.1991). Under this test, as noted above, the state is usually required to provide a hearing before

it may deprive a person of property. *Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984.

 Where, however, the deprivation occurs in a random and unpredictable manner, it is not feasible for the state to provide a pre-deprivation proceeding. *See id.* at 128–29, 110 S.Ct. at 984–85; *Ezekwo*, 940 F.2d at 784. In such cases, post-deprivation tort remedies are all the process that is due. *Id.* The Supreme Court, for example, has held that state tort remedies provide sufficient procedural protection for prisoners alleging that their property was either intentionally or negligently destroyed by prison officials. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). By contrast, where "the depriving actions were taken by a high-ranking official having final authority over the decision making process" they cannot be construed as "random and unauthorized." *Dwyer*, 777 F.2d at 832 (citing *Burtnieks v. City of New York*, 716 F.2d 982 (2d Cir. 1983)). In the latter case, in part because the depriving actions are foreseeable, the state is generally required to provide a pre-deprivation hearing. *See id.* at 833.

Yet, under *Mathews*, attendant fiscal and administrative burdens must be considered. As the Second Circuit has stated:

> We recognize ... that a state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions or by implementing a considered substantial reduction in its work force. We are not persuaded that the state must routinely provide hearings for employees whose positions are targeted

for elimination whenever the state adopts such efficiency measures.

*Dwyer*, 777 F.2d at 833. Striking what could be considered a balance between private and public interests, the Second Circuit articulated a sensible holding. The court wrote:

> Where ... there is no indication that the state has undertaken substantial [reductions in its workforce] but rather is alleged to have targeted a single employee for termination, we hold that if the state has a due process obligation to provide a hearing prior to removing that employee from his ongoing position, and if the employee protests the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.

*Id.*

 In the instant case, decisions to abolish the full-time position and terminate Cifarelli were made by the Board, a body having final decisionmaking authority for the Village.[3] As such, the depriving action was foreseeable and created a circumstance in which pre-deprivation process is typically necessary. Although defendants do not defend of the ground that the Board's decision to abolish the full-time position was part of a sweeping plan to reduce the state's workforce, they insist that a pre-termination hearing was not necessary because the decisions were made for economic reasons. Plaintiff alleges that these reasons were pretextual.[4] Even if the reasons were pretextual, defendants counter, no hearing was required because Cifarelli never requested one.

---

3. Because the decisions to abolish the full-time position and to terminate Cifarelli were made by a body with final official decisionmaking authority, the Court need not address the issue of municipal liability under § 1983. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

4. Plaintiff did not allege pretext in the Complaint; he made that argument for the first time in his brief submitted in opposition to defen-

dant's motion for summary judgment. After being served with defendants' motion, plaintiff, by letter dated September 21, 1994, sought leave to amend the Complaint to include an allegation that the Board's decision to terminate plaintiff "was not made in good faith." Because leave to amend a complaint "shall be freely given when justice so requires," *see* Fed.R.Civ.P. 15(a), the Court treats the Complaint as amended to include an allegation that the Board's reasons were pretextual.

Indeed, plaintiff fails to allege, or even argue, that he requested a hearing at any time, prior or subsequent to his termination. In *Dwyer*, the Second Circuit unmistakably obligated the employee to initiate whatever procedural mechanisms the state or locality may have in place, by requiring him to request a hearing prior to termination. *See* 777 F.2d at 837 (cautioning that, on remand, if the plaintiff "cannot show that he made a timely request for a pre-termination hearing, he is not entitled to recover for the failure to receive such a hearing"). Cifarelli failed to undertake this obligation.

Nonetheless, it is apparent to the Court that Cifarelli was not afforded sufficient time to make such a request. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1974) (" 'The fundamental requisite of due process of law is the opportunity to be heard,' *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914), a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to … contest,' *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)."); *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1863) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."). According to the Complaint, Cifarelli was notified that the full-time position would be abolished and that he would be terminated no more than a "few hours" before the Village's decision was formalized. Defendants do not argue otherwise. A "few hours" is hardly enough time for an individual to digest this type of troubling news much less formulate a basis for objection. The Court determines, as a matter of law, that Cifarelli did not receive adequate notice of termination as required by the Constitution. Without notice, he cannot be expected to have made a timely request for a hearing. More process was due. As such, defendants' failure to provide sufficient notice effectively deprived plaintiff of his right to a pre-termination hearing.

Even though plaintiff's right to procedural due process was violated by defendants—and defendants' motion for summary judgment must be denied to that extent—if defendants can establish that Cifarelli would have been terminated even after a proper pre-termination hearing, Cifarelli will be entitled to an award of only nominal damages. *See Dwyer,* 777 F.2d at 834 (citing *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978)). Whether the deprivation was justified is a question that can be resolved on summary judgment in the instant case.

Under New York law, "a public employer may abolish civil service positions for purposes of economy or efficiency," *Bianco v. Pitts,* 200 A.D.2d 741, 607 N.Y.S.2d 78, 79 (2d Dep't 1994) (citing *Matter of Aldazabal v. Carey,* 44 N.Y.2d 787, 406 N.Y.S.2d 32, 33, 377 N.E.2d 476, 477 (1978)), so long as the abolition is not "a subterfuge to avoid the statutory protection afforded to civil servants before they are discharged," *id.* (citing *Wood v. City of New York,* 274 N.Y. 155, 8 N.E.2d 316 (1937)). A party "challeng[ing] the abolition of a position has the burden of proving that the act was not effected in good faith." *Id.* (citing *Matter of O'Donnell v. Kirby,* 112 A.D.2d 936, 492 N.Y.S.2d 454, 456 (2d Dep't 1985) and *Piekielniak v. Axelrod,* 92 A.D.2d 968, 460 N.Y.S.2d 836, 837 (3d Dep't 1983)).

Defendants assert that the full-time position was abolished for reasons of economy and have advanced the affidavit of Conroy in support thereof. Plaintiff, therefore, must show that he can meet his burden, in the eyes of reasonable jurors, on the issue of defendants' good faith in order to survive defendants' motion for summary judgment. Plaintiff argues pretext, but relies on no more than the Board's initial decision to offer the part-time position to Fellman in support of that contention. The choice of Fellman for the part-time position, instead of Cifarelli, is the only evidence Cifarelli advances to establish a genuine issue of material fact for trial. The record, however, amply demonstrates the Board's good faith: (1) the Department had advised the Village that the part-time position could be offered to someone other than Cifarelli; (2) when the Department retracted that advice, and instruct-

ed the Village that it must offer the part-time position to Cifarelli, the Village swiftly complied; (3) when the Department instructed the Village that it must advance a more detailed offer to Cifarelli, the Village swiftly complied; (4) when Cifarelli purported to accept the part-time position after the deadline for acceptance, the Village did not reject his acceptance outright, but agreed to abide by the decision of the Department. Moreover, the positions are different: the full-time position paid $30,100 annually; the part-time position paid $5,000.

■ Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial. No reasonable juror could conclude, on this record, that defendants acted with anything less than a good faith motive in abolishing the full-time position. To the contrary, the record reasonably supports the conclusion that the Board, eager to streamline costs, reacted to a decrease in the Village's demand for building inspections. The Court determines, as a matter of law, that the Board acted in good faith.

■ In addition, because Cifarelli has presented no credible evidence to show that the Village lacked justification for the abolition of the full-time position, the Court also determines, as a matter of law, that a pretermination hearing would not have staved off his termination. As such, although defendants' failure to provide plaintiff with sufficient notice of termination and a pre-termination hearing violated his right to procedural due process, defendants' motion for summary judgment should be granted insofar as it seeks to bar plaintiff from recovering more than a nominal amount.

## 2. The Part–Time Position

Plaintiff also claims that, when he was terminated by virtue of the abolition of the full-time position, a property interest was created for him for employment in the part-time position, and that he was deprived of this property interest without due process of law. Defendants, by their summary judgment motion, seek to dismiss this claim as well.

■ Under New York law, where a civil service position has been abolished, the employee terminated in accordance therewith has a right to be placed on a "preferred list" for employment in newly created positions of a similar nature. N.Y.Civ.Serv.Law § 81(1); see Meenagh v. Dewey, 170 Misc. 192, 9 N.Y.S.2d 97, 100 (Sup.Ct.N.Y.County 1938). Although defendants concede that plaintiff had a property right in the part-time position, the Court is far from convinced that the part-time position, paying $5,000, is comparable to the full-time position, paying $30,100. Notwithstanding, plaintiff has failed to establish that a genuine issue of material fact exists as to whether he should have been immediately placed on a preferred list for the part-time position. To the contrary, the record reveals that plaintiff *was* placed on a preferred list and *was* offered the part-time position. The initial offer of employment in the part-time position made to Fellman by the Village may have been improper, but the record establishes that the error—if in fact it was an error—was promptly remedied.

■ Plaintiff argues that he was not afforded sufficient time to accept the offer of employment in the part-time position. The Court finds no merit to this allegation. Plaintiff was aware of the offer when he received the September 30 letter. After the Department instructed that the Village make a more detailed offer, plaintiff was notified of the offer again when he received the October 25 letter. The October 25 letter cautioned that plaintiff must accept within ten days. It was only after the Village notified plaintiff that his failure to meet the deadline was deemed a declination of the offer that plaintiff purported to accept, by the November 16 letter. No reasonable juror could conclude that plaintiff had insufficient time to accept the offer. The Court determines, as a matter of law, that plaintiff was offered the part-time position in an appropriate manner.

Even if plaintiff possessed a property right in employment in the part-time position, an offer of employment in that position most assuredly satisfies the Due Process Clause. Defendants' motion should be granted to the extent that it seeks summary judgment on

plaintiff's procedural due process claim with respect to the part-time position.

## B. *Equal Protection*

Plaintiff claims that defendants' failure to provide sufficient notice of termination and an impartial hearing, and their subsequent failure to offer him the part-time position, was arbitrary, unreasonable and capricious. He insists that his rights under the Equal Protection Clause were violated.

 The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). Nowhere in the Complaint or in his papers submitted in opposition to defendants' motion does plaintiff compare the treatment he received at the hands of defendants with the treatment received by others. A comparison is at the root of any equal protection claim. Because plaintiff fails to draw any type of comparison, defendants' motion should be granted insofar as it seeks to dismiss the equal protection claim.

The Court acknowledges that plaintiff's allegations seem geared toward a substantive due process claim, even though no such cause of action was plead. The Court notes that, even if construed as a cause of action based on substantive due process rights, plaintiff did not come forward with sufficient evidence in support of his allegation that the Board acted in an arbitrary and capricious manner to survive a motion for summary judgment.

## III. *CONCLUSION*

For the above reasons, defendants' motion for summary judgment is granted in part and denied in part. The motion is granted insofar as it (1) seeks to bar recovery of anything more than nominal damages on plaintiff's procedural due process claims with respect to the full-time position, (2) seeks dismissal of plaintiff's procedural due process claims with respect to the part-time position, and (3) seeks dismissal of plaintiff's equal protection claims. The motion is denied insofar as it

seeks dismissal of plaintiff's claim that his right to procedural due process was violated.

The Clerk of the Court is directed to enter judgment in favor of plaintiff on the first cause of action in the Complaint for nominal damages. The remaining causes of action in the Complaint are dismissed.

SO ORDERED.