Michael DOODY, Plaintiff,

v.

**TOWN OF NORTH BRANFORD, Defendant.**

No. 3:11cv01306 (AWT).

United States District Court, D. Connecticut.

Sept. 24, 2013.

---

John R. Williams, Rose Longo–McLean, John R. Williams & Associates, LLC, New Haven, CT, for Plaintiff.

Alexandria L. Voccio, David S. Monastersky, Howd & Ludorf, LLC, Hartford, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Plaintiff Michael Doody ("Doody") brings this action against defendant Town of North Branford (the "Town") alleging that the Town deprived him of a constitutionally protected property interest without due process of law in violation of 42 U.S.C. § 1983. The Town has moved for summary judgment. For the reasons set forth below, the defendant's motion for summary judgment is being denied in part and granted in part.

### I. FACTUAL BACKGROUND

Doody is the former Deputy Chief of Police for the Town, a former Mayor and Deputy Mayor of the Town, and a member of the Town Council. As part of his responsibilities as Deputy Chief, Doody was in charge of preparing the annual budget for the North Branford Police Department (the "NBPD"). Once prepared, the bud-

get would be reviewed by the Chief of Police and the Board of Police Commissioners (the "Commissioners"), and ultimately presented to the Town Council. The Town Council, including Doody in his capacity as Council member, considered the proposed budgets for all departments in the Town, and voted on motions approving or modifying these proposals.

In early 2011, Doody prepared the NBPD's 2011–2012 budget, as usual, and it was subsequently approved by the Chief of Police and the Commissioners. The draft budget included funding for all then-current NBPD positions, including Doody's own Deputy Chief position. On April 5, 2011, the Town Council reviewed the proposed NBPD budget and passed a motion "to refer to the Police Commission a question of how a $110,000 decrease in their budget could be applied and to [ask the Police Commission to] bring an explanation back to the Council" the following night. (Def.'s Ex. E.) Doody abstained from this vote, as it was his practice to abstain from votes that dealt with the police department payroll or that could affect his salary. Other than Doody's abstention, the vote to pass the motion was unanimous.

The next afternoon, April 6, 2011, the Commissioners held an emergency meeting to address the Town Council's motion and discuss how to implement the $110,000 budget reduction. At this meeting,

Chief [of Police] Canelli informed the Commission[ers] that there is no place in the budget for an amount of money of [that] magnitude to come from except from the ... full-time personnel account. The Chief and Commissioners looked through the budget and found that no other cuts could be made from the proposed 2011/2012 Police Budget except the full-time personnel account. The Chief informed the Commission that

in addition to the salary shown in the budget for personnel positions, other monies would also be affected such as[:] medical benefits, pension contributions, clothing allowing [sic], longevity, etc. to reach the requested $110,000 budget cut.

(Deft.'s Ex. F.) The Commissioners unanimously passed a motion adopting the Chief's recommendation to eliminate $110,000 from the full-time personnel account, "if necessary." Id. The Commissioners also noted that "they [were] not prepared to determine which personnel would be eliminated at [that] time." Id.

That evening, Police Commissioner Dan Troiano reported the Commissioners' recommendation to the Town Council, which then passed a motion implementing the $110,000 cut from the NBPD full-time personnel account. Rather than abstain, Doody voted against this motion, but he was the only Town Council member to do so.

Faced with the mandate to reduce their personnel budget by $110,000, the Commissioners had to decide which officer or officers to layoff. In order to limit the impact on policing services provided to the Town, the "Commissioners considered eliminating a non-union position, which consisted of the Chief of Police and Deputy Chief" because

[a]n elimination of any position other than [those] ... would have resulted in the layoff of the two least senior members of the Police Department in accordance with the union agreement. Such loss of personnel would have directly, negatively impacted the provision of police services[, in the minds of the Commissioners,] because the two least senior members of the Police Department were officers directly patrolling the Town and responding to calls for service.

(Troiano Aff. (Deft.'s Ex. D) ¶ 10.) The Commissioners then requested that Lieu-

tenant David D'Ancicco survey the police departments in similar towns to determine how they were structured, and whether one of these positions could be eliminated without affecting policing services. Lieutenant D'Ancicco found that many comparable departments did not have a Deputy Chief, and were able to function effectively with only a Chief of Police.

On July 12, 2011, a notice announcing that a special meeting of the North Branford Police Commissioners would be held the next day was posted in the Town Hall. The notice did not state what topics the Commissioners would consider or what motions would be discussed. At this meeting, the Commissioners unanimously voted that "the $110,000 budget cut from the fulltime ... account shall be [accomplished through] the elimination of the Deputy Chief position effective July 14, 2011." (Def.'s Ex. A.) Apart from the publicly posted notice announcing the meeting's general existence, Doody received no official communication from the Commissioners or the Town that a vote was taking place, or that his position was being considered for elimination. Doody was, however, told by a fellow officer about the vote while on vacation in Missouri. He received a call shortly before the July 13 meeting began, and his wife was able to attend the meeting, although Doody was not. The Commissioners sent official notice of the elimination of his position to Doody by hand-delivered letter on July 17, 2011.

Shortly after receiving this letter, Doody spoke with the North Branford Town Manager in order to protest his termination. He informed the Town Manager that he believed that his layoff "was wrong" and that the Town "could have [taken] different steps" to implement the budget cuts, and asked "how [he] could ... appeal [his] layoff." (Doody Dep. (Deft. Ex. C) 58–60).

Although the Town Manager informed Doody that "he would look into it ... [Doody] never heard anything back from him." *Id.* at 58. Other than this conversation, Doody took no steps to appeal his layoff before filing the instant case.

Doody claims that the Town deprived him of his Fourteenth Amendment right to procedural due process by failing to provide him with a hearing both prior to and after eliminating his position. The Town contends that because Doody's position was eliminated as a result of budgetary issues, and not based on any charges against Doody, it was under no obligation to provide a pre- or post-termination hearing unless Doody specifically requested one.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.

1987); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

 Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment.

*See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (internal quotation marks omitted) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts

showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

■ To prevail on a procedural due process claim, the plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir.1990) (per curiam) (emphasis omitted). The amount of process due to a given plaintiff "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). As such, due process may require that the plaintiff received an opportunity to be heard before being deprived of his property right, after being deprived of his property right, or both before and after the deprivation.

For the purposes of its motion for summary judgment, the defendant concedes that the plaintiff had a constitutionally protected property interest in his position as Deputy Police Chief. The defendant also concedes that it deprived Doody of that interest when the Commissioners voted to eliminate the position. (*See* Deft.'s Mem. Supp. Mot. Summ. J. (Doc. No. 42–2) 14.) However, the Town argues that this deprivation was not effected without due process, and that it did not fail to provide Doody with adequate procedural protections either before or after his termination.

Thus, the court must determine what process the plaintiff was due, and whether the defendant sufficiently provided it to him.

### A. Pre–Termination Hearing

■ First, the court must decide whether the Town owed Doody a hearing prior to eliminating his position, and, if so, whether the Town complied with that obligation. "[A]s a general matter the removal of a tenured employee from his position requires some kind of preremoval hearing." *Dwyer v. Regan,* 777 F.2d 825, 831 (2d Cir.1985), *modified,* 793 F.2d 457 (2d Cir.1986). Indeed, the Supreme Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." ... This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Bd. of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) (emphasis in original).

■ Despite this general rule that government employees with property interests in their positions are due a pre-termination hearing, the Second Circuit has recognized an exception when the termination results from the state "decid[ing] to make its operations more efficient by abolishing or consolidating positions...." *Dwyer,* 777 F.2d at 833. In situations such as this, the Second Circuit announced that it was "not persuaded that the state must routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such

efficiency measures;" instead, a pre-termination hearing is required only "if the employee protests the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right...." *Id.* at 833. The *Dwyer* court was acutely aware of the need to balance the government's interest in efficient layoff procedures with employees' Fourteenth Amendment rights. The plaintiff in *Dwyer* claimed, as Doody does here, that the economic justification for the elimination of his position was a mere pretext for his removal by a supervisor who personally disliked him. The Second Circuit wanted to ensure that the government could not "use a pretextual announcement of [efficiency] measures in order to circumvent an employee's property right not to be removed from his position without due cause," without also "detract[ing] from the state's ability to adopt bona fide efficiency measures." *Id.* at 833. It found that "requir[ing] that a pretermination hearing on the claim of sham be provided if one is requested" struck the appropriate balance between these two interests. *Id.* Therefore, due process requires a pre-termination hearing for a laid-off government employee, even one who is tenured, only when that employee: 1) claims that the purported reasons for the termination were pretextual; and 2) demonstrates that he timely requested a hearing. *See, e.g.,* *McMullen v. Rossmy,* 600 F.Supp.2d 345, 351 (D.Conn.2009); *Pulaski v. Stratford Bd. of Educ.,* No. 3:04CV2015, 2006 WL 2361724, at *3 (D.Conn. Aug. 15, 2006); *Perkowski v. Stratford Bd. of Educ.,* 455 F.Supp.2d 91, 95 (D.Conn.2006). Without meeting both requirements, a laid-off plaintiff cannot show that the state did not provide him with adequate due process before eliminating or consolidating his position for economic reasons.

Here, the defendant contends it owed Doody no pretermination hearing because he both failed to request such a hearing and never advised a Town official or the Commissioners of his belief that the reasons for the elimination of his position were pretextual. Thus, the defendant argues, Doody does not satisfy either prong of the *Dwyer* pre-termination hearing standard. However, implicit in a standard that a hearing is necessary only "if the employee protests the notice of elimination of his position" is a requirement that the employee actually receive notice sufficient to allow him to timely protest elimination of his position. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (noting that the fundamental due process "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest"). While it is unclear what the constitutionally-permissible minimal amount of time for such notice is, there is some guidance as to what is insufficient. For instance, a plaintiff's right to due process was violated when the defendants provided notice of the vote abolishing the plaintiff's position only "a few hours" before it occurred. *See Cifarelli v. Village of Babylon,* 894 F.Supp. 614 (E.D.N.Y.1995), *aff'd,* 93 F.3d 47 (2d Cir.1996). The court stated in *Cifarelli:*

> A "few hours" is hardly enough time for an individual to digest this type of troubling news much less formulate a basis for objection. The Court determines, as a matter of law, that Cifarelli did not receive adequate notice of termination as required by the Constitution. Without notice, he cannot be expected to have made a timely request for a hearing. More process was due. As such, defendants' failure to provide sufficient

notice effectively deprived plaintiff of his right to a pre-termination hearing. *Id.* at 621.

■ In the instant case, Doody was not even afforded a few hours' notice before his termination. It is undisputed that Doody was not officially informed of the fact that his position was eliminated effective July 14, 2011 until July 17, 2011. Although Doody was aware that the Commissioners were tasked with eliminating $110,000 from the payroll budget, and had at least constructive knowledge that a special meeting was occurring on July 13, 2011, this general awareness on his part is no substitute for adequate notice. Similarly, the telephone call that Doody received from a fellow officer informing him about the meeting is not sufficient to provide him with adequate notice. Mere rumors or hearsay cannot supplant the official and timely notice of termination that is required under the *Dwyer* standard in order to shift the burden of requesting a pretermination hearing to the employee.

Therefore, although Doody did fail to protest his termination before it occurred, under the circumstances here this failure does not prevent him from claiming a violation of his due process right to a pre-termination hearing. Because the Town provided Doody no notice prior to the lay-off becoming effective, it did not afford him an opportunity to timely object, which is a prerequisite to waiver of one's pretermination hearing rights. Therefore, the defendant's motion for summary judgment is being denied with respect to this aspect of plaintiff's claim.

**B. Post–Termination Hearing**

■ The plaintiff also claims that the defendant violated his due process rights by failing to provide him with an adequate opportunity to be heard after his position was eliminated. Just as with his right to a pre-termination hearing, *Dwyer* dictates the amount of process due to Doody after his termination: the Second Circuit specifically noted there that "even if [the plaintiff] did not timely demand a pretermination hearing, he was nevertheless entitled to a post-termination hearing on his contention that he was impermissibly deprived of his property right." *Dwyer,* 777 F.2d at 834. In fact, the court emphasized that "[t]he nature of a claim of sham is such that a post-termination hearing will likely be *more valuable* to the claimant than a pretermination hearing, since an after-the-fact transfer of the claimant's duties to a new employee would provide evidence in support of the claim of sham." *Id.* (emphasis added). Therefore, regardless of the availability of or request for a pre-termination hearing, a tenured employee has a right to some form of post-termination hearing to determine whether the employer's actions were improper.

■ However, rather than requiring post-termination hearings for every laid-off employee, the court set forth two criteria that the plaintiff must show to demonstrate that his due process rights had been violated. Specifically, the plaintiff must establish: 1) that "the state courts did not afford a full and fair opportunity to adjudicate his claim of a sham abolition of his position;" and 2) that "he requested and was denied" "an administrative post-termination hearing on his claim of sham abolition." *Id.* Due process is not violated if either of these requirements is not satisfied because, in that scenario, the plaintiff cannot prove that he was deprived of a constitutionally sufficient hearing. Thus, "if a state court proceeding would have been adequate," or "even if state court proceedings are shown to have been inadequate, if [the plaintiff] made no request for . . . an administrative post-termi-

.

nation hearing, the complaint should be dismissed." *Id.* at 384–85.

Viewing the evidence in the light most favorable to the plaintiff, Doody cannot satisfy the criteria to show that he was unconstitutionally deprived of a post-termination hearing. In particular, Doody has failed to create a genuine issue of fact as to whether he requested a post-termination hearing. Although Doody "protest[ed] his termination . . . and was told by the Town Manager that he had no right to a post-termination appeal," his statements did not amount to a request for a hearing. (Pl.'s Mot. Opp. Summ. J. at 4–5.) Communications with supervisors or town officials in which a terminated employee complains about his firing, but does not specifically request a hearing to review it, do not constitute formal requests. *See, e.g., McMullen,* 600 F.Supp.2d at 348, 351 (finding that the plaintiff "never requested [a post-termination] hearing" even though he "filed a grievance by letter . . . to . . . the Town Administrator"); *Pulaski,* 2006 WL 2361724, at *2, *8 (describing how the plaintiff "never sought to invoke" either a pre- or post-termination hearing, despite the fact that she met with her supervisor to complain after receiving notice that her position was being terminated).

Although Doody complained to the Town Manager about his layoff, there is no evidence that could support a conclusion that he ever requested a hearing. Doody admits that he never "appeal[ed] to the board of police commissioners concerning [his] layoff," and that his conversation with the Town Manager amounted to him asking only "how [he] could . . . appeal [his] layoff." Doody Dep. (Deft.'s Ex. C) 58. Asking how to appeal and asking to appeal communicate materially different messages, so "it is difficult to see how the [Town] should be blamed for failing to make available to [Doody] post-termination procedures that [he] never sought to invoke." *Pulaski,* 2006 WL 2361724, at *8. Therefore, because the plaintiff has not demonstrated the existence of a genuine issue of fact regarding any request by him for a post-termination hearing, the Town is entitled to summary judgment on this point.[1] Accordingly, as it pertains to Doody's due process right to a post-termination proceeding, the defendant's motion for summary judgment is being granted.

## IV. CONCLUSION

For the reasons set forth above, defendant Town of North Branford's Motion for Summary Judgment (Doc. No. 22) is here-

---

1. Whether the other prong of the *Dwyer* post-termination standard—the availability to Doody of adequate state court proceedings—is similarly unsatisfied is unclear at this stage of the proceedings. The defendant claims that adequate grievance procedures were available to the plaintiff through the union contract that the plaintiff contends applied to him (even though he was not a member of the union). *See* Deft.'s Reply Mem. Supp. Summ. J. at 6–9. If this is so, then such proceedings would have been adequate to satisfy the *Dwyer* requirement. However, the plaintiff claims that the union grievance procedures were available only to employees who were discharged for cause, and not to laid-off em-

ployees. *See* Pl.'s Local Rule 56(a)1 Statement (Doc. No. 43–1) ¶ 35. There appears to be a genuine issue as to this point. Additionally, while the court is aware that Connecticut state law likely provided adequate procedural protections for Doody, *see, e.g.,* Conn. Gen. Stat. §§ 31–97, 52–413, neither party discusses these statutes. While the defendant cites to cases discussing the applicability of these statutes to the *Dwyer* standard, it does not argue that the plaintiff cannot satisfy the first prong of *Dwyer* because of them. Therefore, the court does not reach the issue of whether Doody had available to him adequate state court proceedings.

by DENIED in part and GRANTED in part.

It is so ordered.