Anne E. HARHAY, Plaintiff,

v.

Maurice W. BLANCHETTE, William R. Harford, Gary J. Blanchette, Cynthia A. Heidari, Donald Weekes, Kenneth J. Brennan, Susan J. Luginbuhl, John O'Shaughnessy, Wendy J. Ciparelli, Richard Currey, Board of Education of the Town of Ellington, and Richard E. Packman, Defendants.

No. 3:00CV00365 AWT.

United States District Court, D. Connecticut.

Aug. 28, 2001.

Board of Education of the Town of Ellington (the "Board"), Superintendent Richard E. Packman ("Packman"), and the individual members of the Board (the "Board members"), alleging (1) breach of contract, (2) intentional infliction of emotional distress, and (3) violation of her right to procedural due process. The defendants have moved for summary judgment as to all counts on the grounds that the plaintiff has failed to exhaust her administrative remedies (all counts), that the defendants are entitled to legislative and/or qualified immunity (Count Three), and that the complaint fails to state a claim upon which relief may be granted (Count Two). For the reasons set forth below, the motion is being granted in part and denied in part.

## I. *Background*

From September 1981 through March 1994, the plaintiff was employed by the Town of Ellington Board of Education as an elementary school art teacher. Throughout this time, the plaintiff was certified to teach art at all grade levels from pre-kindergarten to grade 12.

In early 1994, the Board voted, as part of a budgetary cutback, to eliminate art teachers in elementary schools. On March 16, 1994, the Board voted to terminate the plaintiff's employment effective March 17, 1994. At the time Harhay's employment was terminated, her employment was governed by a contract between the Board and the Ellington Education Association, the labor union representing elementary school teachers in the Ellington school system.

In 1994, the plaintiff was a tenured teacher. The plaintiff's employment contract provided that as a tenured teacher, her employment could only be terminated if there were no position available for which she was qualified. In March 1994, there was no vacant position for which

Noah H. Starkey, Hartford, CT, for plaintiff.

Michael J. Rose, Daniel C. DeMerchant, Howd & Ludorf, Hartford, CT, for defendants.

## *RULING ON MOTION FOR SUMMARY JUDGMENT*

THOMPSON, District Judge.

Plaintiff Anne E. Harhay ("Harhay") brought this action against defendants

Harhay was qualified. The contract provides for the establishment of a "reappointment list". When a teacher's employment is terminated due to the elimination of a position or general cutback, as was Harhay's, that teacher has the right to be placed on the reappointment list for up to three years. During the time that a teacher is on the reappointment list, he or she has a right to be appointed to any position for which he or she is qualified which becomes vacant. Harhay notified the Board of her desire to have her name placed on the reappointment list, and her name remained on the list for three years.

On or about September 25, 1996, an art teacher employed by the Board named Norton Berkowitz ("Berkowitz") submitted a letter to Superintendent of Schools Packman indicating his intent to retire effective February 1, 1997.[1] By letter dated November 18, 1996, Berkowitz again informed Packman of his intent to retire effective February 1, 1997. By letter dated December 9, 1996, Berkowitz notified the State of Connecticut Teachers' Retirement Board that he intended to retire effective February 1, 1997 and that he would expect to begin receiving retirement benefits after that date. By letter dated December 30, 1996, the Assistant Administrator of the Retirement Board notified Packman that Berkowitz had submitted an application for retirement benefits, and that the Retirement Board would need certain documentation from the Board and Packman regarding Berkowitz's employment history. On or about January 3, 1997, the Board and Packman completed the retirement form. The form was signed by Packman, and it indicated that the reason for the termination of Berkowitz's employment was retirement.[2] At more than one meeting of the Board, a motion was made to approve Berkowitz's retirement, but the motion was "tabled" and not acted upon. Berkowitz's request to retire was eventually approved, but the effective date of his retirement was designated as July 1, 1997, not February 1, 1997, as he had requested.

The plaintiff was on the reappointment list until March 17, 1997, and she was entitled by virtue of her seniority to be appointed to any position for which she was qualified which became available on or about February 1, 1997. Harhay was qualified for the position from which Berkowitz intended to retire effective February 1, 1997.

When the plaintiff became aware that Berkowitz had given notice of his intent to retire, she notified Packman, by letters dated November 21, 1996 and December 3, 1996, that she desired to be appointed to the position being vacated by Berkowitz. On or about December 3, 1996, the plaintiff received a letter from Packman stating that "the Ellington Board of Education does not have a resignation from Mr. Berkowitz and therefore no vacancy." The plaintiff was never reappointed to fill the vacancy left by the retirement of Berkowitz. Instead, a "long-term substitute" teacher was hired to replace Berkowitz. This substitute position was advertised in the newspaper. Harhay did not apply. The Board stated in a letter to the plaintiff's union that Berkowitz would replace the substitute teacher when he was "able to resume teaching." None of the letters from Berkowitz to the Board indicating his intention to retire suggested that he hoped to return to teaching, that he had somehow become unable to teach, or that he was disabled.

---

1. Berkowitz did not lose his job as part of the 1994 cutbacks because of his seniority.

2. It is not apparent whether this form was actually sent to the Retirement Board.

The plaintiff filed a grievance, through her union, based upon the Board's refusal to reappoint her to fill the position being vacated by Berkowitz. The Board responded to this grievance by stating that no vacancy existed, and so the plaintiff had no right to reappointment. The Board contended that Harhay's right to reappointment did "not extend to substitute positions, long-term or otherwise." The grievance proceeded through several initial "steps", and was eventually scheduled for arbitration. However, before arbitration was held, the union, which had the sole right under the plaintiff's employment contract to decide whether or not to pursue any grievance to the arbitration level, unilaterally withdrew the demand for arbitration on March 18, 1997.

On January 29, 2000, the plaintiff filed the instant lawsuit, claiming that the Board's refusal to allow Berkowitz to retire as of February 1, 1997 was part of a concerted effort to deny her the right to be appointed to his position.

## II. *Legal Standard*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c) (2000). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual

dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

### III. *Discussion*

#### A. Failure to Exhaust Administrative Remedies—All Counts

The defendants claim that the plaintiff has failed to exhaust her administrative remedies.[3] However, Harhay has

---

**3.** Generally, exhaustion of administrative remedies "should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of the State of Fl.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, when the claim is based upon the procedural due process clause of the fourteenth amendment, the rule is different. The rights which form the basis of a procedural due process claim are not "independent statutory rights accorded by

Congress." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Supreme Court explained the reason that exhaustion of administrative remedies is required in procedural due process claims, even though it is not required in other claims brought pursuant to § 1983, as follows:

> In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or prop-

made a showing that she did everything she could · to exhaust her administrative remedies. Her affidavit shows that she had no further administrative remedies available to her beyond those she pursued. See Harhay Aff. ¶ 32. Only the plaintiff's union could have proceeded further with arbitration, as provided for by the plaintiff's employment contract,. and the union, contrary to the wishes of the plaintiff, refused to proceed further. Id. at ¶¶ 31–34. Therefore, summary judgment on this ground is being denied because the defendants have not established that the plaintiff failed to exhaust available administrative remedies.

### B. Legislative Immunity—Count Three

■■■ The defendants further argue that the Board members are entitled to summary judgment as to Count Three on the grounds that the Board members are protected by the doctrine of legislative immunity.[4] "It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott–Harris*, 523 U.S. 44, 46, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). In 1998, the Supreme Court held that this protection extends to "local officials performing legislative functions" as well. *Id.* See also *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir.1997) ("We therefore now explicitly hold that the doctrine of absolute legislative immunity under § 1983 applies to local legislators.") The question, then, is not whether the Board members are entitled to legislative immunity as a general proposition, but whether the actions the plaintiff claims they took in this case are protected by the doctrine of legislative immunity.

■■■ "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 973. "In determining whether absolute immunity obtains, we apply a functional approach, looking to the function being performed rather than to the office or identity of the defendant." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir.1995). As part of its analysis, a court must "examine the nature of the functions with which a particular official or class of officials has been entrusted, and ... seek to evaluate the effect that exposure to particular forms of liability would have on the exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).[5] The

erty is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (internal citations omitted).

4. "Absolute legislative immunity is a doctrine that protects individual legislators from liability for their legislative activities. That doctrine does not protect the governing bodies on which they serve." *Ritz v. Town of East Hartford*, 110 F.Supp.2d 94, 97 (D.Conn.2000). Therefore, this defense can not be asserted by the Board. Because defendant Packman is not a member of any legislative body, but strictly an administrator, he also can not assert this defense.

5. Although *Forrester* involved a claim of absolute judicial immunity, as opposed to absolute legislative immunity, its discussion of the pur-

Supreme Court "has generally been quite sparing in its recognition of claims to absolute official immunity." *Id.* "A viable § 1983 claim against a town legislator in his individual capacity must allege acts taken under color of state law, but not acts that were legislative in nature." *Carlos,* 123 F.3d at 66.

Although the Second Circuit has never addressed the issue,[6] other courts have repeatedly held that employment (and other) decisions affecting and directed at one specific person, and limited to that person's circumstances, are administrative in nature, and therefore the officials making those decisions are not entitled to legislative immunity. *See, e.g., Acevedo–Cordero v. Cordero–Santiago,* 958 F.2d 20 (1st Cir. 1992) (finding that summary judgment was not appropriate where genuine issues of material fact existed as to whether adoption of an ordinance eliminating specific employees' jobs was legislative in nature so as to warrant the attachment of immunity); *Abraham v. Pekarski,* 728 F.2d 167 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984) (finding termination of plaintiff's employment to be a managerial decision not entitling officials to legislative immunity); *Alexander v. Holden,* 66 F.3d 62 (4th Cir.1995) (finding that a decision to fire a specific employee is an administrative decision, which does not entitle the decision-makers to legislative immunity); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056 (11th Cir.1992) (finding that public officials are not entitled to legislative immunity for personnel decisions relating to individual employees);

*Visser v. Magnarelli,* 542 F.Supp. 1331 (N.D.N.Y.1982) (finding that members of city council who refused to hire plaintiff were not performing a legislative function and were not entitled to legislative immunity). In fact, the Supreme Court has noted: "In several instances, moreover, we have concluded that no more than a qualified immunity attaches to administrative employment decisions, even if the same official has absolute immunity when performing other functions." *Hafer v. Melo,* 502 U.S. 21, 29, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). On the other hand, when a governing body votes, as a part of its budget or policy-making process, to "abolish a series of positions", its members may be protected by absolute legislative immunity. *Orange v. Cty. of Suffolk,* 830 F.Supp. 701, 705 (E.D.N.Y.1993). *See also Rini v. Zwirn,* 886 F.Supp. 270 (E.D.N.Y. 1995) (board members who voted to eliminate funding for a whole class of positions entitled to legislative immunity).

In an analogous case evaluating the scope of absolute immunity afforded to judges, the Supreme Court found that when a judge "demoted and discharged" a judicial employee, he was acting in an administrative, and not a judicial, capacity, and as such was not entitled to judicial immunity. *Forrester,* 484 U.S. at 229, 108 S.Ct. 538. The Court noted that a judge who hires and fires an employee is no different from any official of the executive branch who makes such personnel decisions, and it would certainly be inappropriate to extend absolute immunity to all such decision-makers, although the defense of

---

poses, limitations, and application of immunity is instructive here. In *Forrester,* the Court specifically noted that the legislative, executive, and judicial forms of absolute immunity are all very narrowly circumscribed. *Forrester,* 484 U.S. at 224–25, 108 S.Ct. 538.

6. In *Jessen v. Town of Eastchester,* 114 F.3d 7, 8 (2d Cir.1997), the Second Circuit was presented with the question of whether the elimination of a single position by a town board "was a legislative act for which [the board members] are entitled to absolute immunity from suit." However, the court declined to reach that question.

qualified immunity might be available in some cases. *Id.* at 229–30. The same rationale applies here.

■ In this case, the actions allegedly taken by the Board members to deny the plaintiff an opportunity to return to work were administrative, and not legislative, in nature. There was no general policy to be implemented, no broad forward-looking rule to be adopted. Instead, the Board members allegedly refused to accept the resignation of an art teacher solely to prevent to the plaintiff from being rehired to fill the vacancy the resignation would have created, and also allegedly failed to notify the plaintiff when an opening was available.[7] These acts, although performed by a body which has legislative powers, are not legislative in nature, and the Board members are therefore not entitled to legislative immunity.

### C. Qualified Immunity—Count Three

■ The defendants argue that even if absolute legislative immunity does not apply, Packman and the Board members are entitled to qualified immunity, and that summary judgment should be granted on that basis. "The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe that their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir.2000).

■ However, the defendants have not met their initial burden on a motion for summary judgment of establishing that no

genuine issue of material fact exists as to the allegations in Count Three. The plaintiff has alleged that the defendants refused to permit Berkowitz to retire effective February 1, 1997, in order to prevent the plaintiff from being eligible for reappointment to the position vacated by Berkowitz. The plaintiff contends that the defendants were prepared to allow Berkowitz to retire as of February 1, 1997, and refused to do so only because they did not want to allow a vacancy to be created prior to March 17, 1997, when the plaintiff's right of reappointment expired.

■ The plaintiff had a contractual right to reappointment to any vacant position for which she was qualified. A tenured public employee has a constitutionally protected property interest in his or her job, and can not be deprived of that interest without due process. *See, e.g., De-Michele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir.1999). This right is clearly established. Thus, the defendants cannot prevail under the first prong of the qualified immunity defense. In addition, as to the second prong of the qualified immunity defense, the defendants have not established that no genuine issue of material fact exists as to whether their action in refusing to accept Berkowitz's retirement was objectively reasonable in light of the circumstances. Therefore, summary judgment in favor of the defendants on the ground of qualified immunity is being denied.

### D. Failure to State a Claim—Count Two

Finally, the defendants argue that as to Count Two, the plaintiff has failed to state

---

7. The court notes that the Board's decision to eliminate funding for art teachers in the elementary school, which initially caused the plaintiff to lose her job, is not being challenged here. If it were, the Board members would almost certainly be entitled to legislative immunity for their actions in voting to eliminate the funding, which is a budgetary act, discretionary in nature.

a claim upon which relief can be granted. The court agrees.

■ The Connecticut Supreme Court has set forth the necessary elements of a claim for intentional infliction of emotional distress, as follows:

> In order for the plaintiff to prevail in a case for liability under intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become a question for the jury.

*Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000) (internal quotation marks and citations omitted). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Ancona v. Manafort Bros., Inc.*, 56 Conn.App. 701, 746 A.2d 184, 192 (2000).

■ "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior and does not give rise to a claim for the *negligent* infliction of emotional distress." *Muniz v. Kravis*, 59 Conn.App. 704, 757 A.2d 1207, 1212 (2000) (emphasis added). *See also Parsons v. United Techs. Corp.*, 243 Conn. 66, 700 A.2d 655 (1997) (employer's actions in escorting a fired employee off the premises after termination did not give rise to a claim for negligent infliction of emotional distress). Likewise, the termination of employment, even when accompanied by other aggravating factors, does not itself give rise to a claim for the intentional infliction of emotional distress. *See, e.g., Muniz*, 757 A.2d 1207 (employer's actions in evicting plaintiff from her apartment on only 24 hours notice and using an armed security guard to notify the plaintiff that her employment had been terminated did not give rise to a claim for intentional infliction of emotional distress); *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 396 (3d Cir.1988) (termination of plaintiff's employment on day he returned to work after heart surgery did not give rise to a claim for intentional infliction of emotional distress).

■ Harhay alleges that the defendants intentionally denied her the opportunity to return to work as an art teacher by refusing to accept the resignation of another teacher, by failing to notify her when a position became available, and by utilizing a long-term substitute teacher to fill that position instead of hiring her as a full-time replacement, all in violation of her contractual rights and due process rights. Although these allegations, if proven, might entitle the plaintiff to relief on some other basis, *i.e.* a contract claim or pursuant to 42 U.S.C. § 1983, they do not support a claim for intentional infliction of emotional distress.

The defendants in this case did not act in an "extreme and outrageous" manner in their dealings with the plaintiff. As the Connecticut Supreme Court has noted, a court may disapprove of defendants' alleged treatment of an employee and still find "the defendants' conduct insufficient to be actionable" in the context of a claim for intentional infliction of emotional dis-

tress. *Appleton,* 757 A.2d 1059, 1063 n. 1. Even if the plaintiff's contentions as to the defendants' conduct were found to be true, that conduct would not rise to the level of "extreme and outrageous" conduct of a nature especially calculated to cause mental distress of a very serious kind, which is what is required to sustain a claim of intentional infliction of emotional distress.

Although the parties disagree as to the motivations behind the defendants' actions, and as to whether the defendants intentionally and unlawfully deprived the plaintiff of her contractual and due process rights, there is no "genuine issue of material fact" as to the nature of the defendants' conduct that would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment in favor of the defendants is therefore appropriate on this claim.

## IV. *Conclusion*

For the reasons stated above, the defendants' Motion for Summary Judgment [Doc. # 14] is hereby GRANTED as to Count Two, and hereby DENIED as to Counts One and Three.

It is so ordered.