**Dorothy Anne BRENNAN, Plaintiff,**

v.

**Frank G. STRAUB, Individually, Elisabeth Vallace, Individually, George Gretsas, Individually, John Dolce, Individually, Edward Dunphy, Individually, Daniel Hickey, Individually, and The City of White Plains, N.Y., Defendants.**

No. 02 Civ. 7655(RWS).

United States District Court, S.D. New York.

Feb. 27, 2003.

Lovett & Gould by Jonathan Lovett, White Plains, NY, for Plaintiff.

Vedder, Price, Kaufman & Kammholz by Jonathan A. Wexler, Neal I. Korval, New York City, for Defendants Frank G. Straub, Elisabeth Wallace, George Gretsas and Edward Dunphy.

## OPINION

SWEET, District Judge.

Defendants Frank G. Straub ("Straub"), Elisabeth Wallace ("Wallace"), George Gretsas ("Gretsas") and Edward Dunphy ("Dunphy") have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff Dorothy Anne Brennan ("Brennan") alleging violations of her civil rights in contravention of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. §§ 2000e et seq. and 42 U.S.C. § 1983, culminating in the termination of Brennan's employment.

For the following reasons, that motion is granted in part and denied in part.

### Facts

The following facts are drawn from Brennan's complaint as befits a motion to dismiss and do not constitute findings of fact by the Court.

### Parties

Brennan is a resident of the State of New York. Until September 3, 2002, she was employed as Assistant to the Commissioner of the City of White Plains' Department of Public Safety (the "Department"). She held that title by reason of a permanent competitive civil service appointment.

Defendant the City of White Plains, New York (the "City") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of New York.

Straub is the duly appointed, incumbent Commissioner of the Department.

Wallace is the Personnel Officer for the City.

Gretsas is the Executive Officer for the City.

Defendant John Dolce ("Dolce") was until his retirement in December 2001, the duly appointed Commissioner of the Department.

Dunphy is the duly appointed Corporation Counsel for the City.

Defendant Daniel Hickey ("Hickey") is the Deputy Commissioner of the Department. Following Dolce's retirement until the hiring of Straub on or about July 8, 2002, Hickey served as the Acting Commissioner of the Department.

### Brennan's First Action And The Ensuing Actions Complained Of

On July 12, 1995, Brennan filed with the Equal Employment Opportunity Commission (the "EEOC") and the New York State Division of Human Rights (the "NYSDHR") a complaint of gender discrimination against the City. (Compl.¶ 11.)

On April 17, 1997, Brennan filed a civil rights action in this court, Brennan v. City of White Plains, 97 Civ. 2709(RWS) ("Brennan I"), upon her receipt of a Notice of a Right to Sue from the EEOC. Brennan has included in the instant complaint the results of discovery in Brennan I. (Compl.¶ 12.)

On February 29, 2000, *Brennan I* was settled pursuant to a confidential stipulation. (Compl.¶ 13.) Since that time, Brennan argues that she has been subject to acts of retaliation by Dolce and Hickey, including, *inter alia:* (1) reducing her staff size to increase her work load; (2) prohibiting her from working overtime; (3) barring her receipt of information necessary to complete her job; (4) reassigning Brennan's job responsibilities to other staff; (5) punishing Brennan for testifying in connection with a civil rights action on behalf of a female co-worker; (6) depriving Brennan of Worker's Compensation benefits; (7) interfering with her medical appointments; and (8) excluding her from critical departmental meetings and planning. (Compl.¶ 14.)

In the Spring of 2002, Brennan told Gretsas about the conduct above. As a result, Gretsas agreed to meet with Brennan ostensibly to gather details of her complaint. (Compl.¶ 15.)

Gretsas then convened a meeting with Wallace, Dunphy and Brennan at which Brennan recounted the conduct above. At the conclusion of the meeting, Gretsas, Dunphy and Wallace informed Brennan that an investigation of her retaliation complaint would ensue and that they would inform her of the outcome of that investigation. (Compl.¶ 16.) Brennan alleges upon information and belief that the investigation supported her allegations and that the three defendants refused to take action against Dolce and Hickey. (Compl.¶ 17.)

Straub took office in July 2002. At that time, he informed Brennan that he was a good manipulator of the Civil Service Law and that he intended to bring his "own guys" into the Department. Brennan alleges that Straub was aware of *Brennan I* at the time of this conversation and intended to ensure that Brennan would be terminated as a result. (Compl.¶ 18.)

In August of 2002, Gretsas, Wallace, Dunphy, Hickey and Straub finalized plans to have Brennan's job title abolished by the City's Common Council (the "Council") in what Brennan deemed to be retaliation for *Brennan I* and her Spring 2002 complaint regarding Hickey and Dolce. They agreed to this course of action under the false impression that, even though they were each knowingly and jointly going to be instrumental in the termination of Brennan's employment, they personally could not be civilly liable for doing so because the Council would take the action immediately causing the job abolition. (Compl.¶ 19.) The legislation was planned to go before the Council on September 3, 2002. (Compl.¶ 20.)

On Friday, August 30, 2002, at approximately 4 p.m., Straub summoned Brennan into his office, where Wallace was waiting. Straub then informed Brennan that (1) she was being terminated; (2) she was required to leave the Department building immediately and could only remove a single personal effect (her pocketbook); (3) on September 3, 2002, the Council would address a request to abolish her job; (4) her job would be abolished on the evening of September 3, 2002; and (5) "the girls" (the adult female subordinates who reported to Brennan) were at that very time being advised of Brennan's dismissal, an event that was described to the subordinates as a "firing." At the same meeting, Straub repeatedly barred Wallace from discussing with Brennan her civil service rights to either vertically "bump" other City employees in order to continue her employment with the City or to "retreat" to a former job title she had held with the City. (Compl.¶ 21.)

Brennan then suffered two falls in the Department building following the meeting. Although she needed and requested immediate medical attention, Brennan al-

leges that Straub purposefully delayed requesting an ambulance. When emergency medical technicians arrived, Straub or Hickey instructed members of the Department to take from Brennan's person her identification, pass and keys, and, as a result, interfered with the efforts of the EMTs. (Compl.¶ 22.)

On September 3, 2002, Wallace filed with the Council the ordinance to abolish Brennan's job title. The Council adopted the ordinance after active encouragement by Gretsas, Dunphy, Wallace, Hickey and Straub. (Compl.¶ 23.)

On September 4, 2002, Straub wrote to Brennan advising that her job title had been abolished effective September 3, 2002, but that she had been terminated effective September 2, 2002. (Compl.¶ 24.) Brennan was removed from the City payroll effective September 2, 2002, following which she was neither paid for salary earned nor compensated for accrued benefits to which she was entitled. (Compl.¶ 25.)

Brennan commenced this action on September 23, 2002, asserting five causes of action in her complaint (the "Complaint"):

- a claim against all the defendants but Straub based on Dolce and Hickey's retaliatory conduct pursuant to Title VII (Count I)[1] and pursuant to 42 U.S.C. § 1983 (Count II);

- a claim against all the defendants but Dolce as a result of retaliatory conduct

pursuant to Title VII (Count III)[2] and § 1983 (Count IV); and

- a claim against all the defendants but Dolce alleging that termination of Brennan's employment deprived her of a right guaranteed her by Section 75 of the New York State Civil Service Law and thus violated § 1983 (Count V).

The four individual defendants filed this motion on December 11, 2002. Brennan filed her opposition on December 24, 2002. The defendants replied on January 7, 2003, and the motion was considered fully submitted on January 8, 2003.

By letter dated January 22, 2003, counsel for both parties sought to have a White Plains-based magistrate appointed. Determination of that request was postponed until this opinion was determined and the parties so requested again in light of the Court's constraints in appointing a White Plains-based magistrate.[3]

## Discussion

### I. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). However, "legal conclusions, deductions, or

---

1. Brennan has since limited this cause of action to be against only the City.

2. Brennan has since limited this cause of action to be against only the City.

3. When a case is filed, parties must indicate on the cover sheet whether it should be assigned to Foley Square or to White Plains. Cases may be assigned to White Plains only if they meet the requirements laid out in Local Rule 21. Because Brennan filed the instant

case as related to one that was previously heard in this Court, it was assigned to Foley Square, and a district court judge and magistrate judge from Foley Square were duly assigned. In order for this case to have a White Plains-based magistrate, but retain the case before a district court judge in Foley Square, special dispensation would have to be sought, and granted, from the Assignment Committee. Alternatively, the parties could move to transfer the case in its entirety to White Plains if it meets the requirements of Local Rule 21.

opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 122 (S.D.N.Y.1988). The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

## II. Counts I and III Are Dismissed as to the Individual Defendants

In light of Brennan's clarification in her opposition papers to this motion (Pl.'s Mem. at 10 n. 3), Counts I and III are dismissed as to all individual defendants. As a result, the defendants' arguments will not be addressed.[4]

## III. The § 1983 Claims

The defendants urge that the § 1983 claims be dismissed against them on the grounds of legislative immunity and on the grounds that the claims fail on the merits. While the defendants have presented arguments that might be compelling on a sum-mary judgment motion, they cannot succeed at this time as the Court must rely on the allegations in the Complaint and draw all inferences in favor of Brennan.

### A. Legislative Immunity

■ The individual defendants argue that they were acting in a legislative capacity in connection with their involvement in the elimination of Brennan's position and therefore that the § 1983 claims against them should be dismissed. This defense is unavailing at this time due to the strictures of Rule 12(b)(6), because the facts as alleged in the complaint do not establish that their actions were legislative, as opposed to administrative, in nature.

It is well-established that federal, state and regional legislators are entitled to absolute immunity from civil liability for their legislative actions. *Bogan v. Scott–Harris,* 523 U.S. 44, 46, 118 S.Ct. 966, 969, 140 L.Ed.2d 79 (1998). That protection has recently been extended to local officials acting in legislative capacities as well. *Id.; see also Carlos v. Santos,* 123 F.3d 61, 66 (2d Cir.1997). In determining whether such immunity applies, courts take a " 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995).

As an initial matter, this case differs from the heartland of legislative immunity cases because the defendants are not members of a legislative body. Instead, they are in support positions to the legislative body. Because of the functional approach taken in this Circuit, however, this

---

**4.** In light of Brennan's admission, the individual defendants in their reply still sought the dismissal of Counts I and III on behalf of the City, purportedly in order to limit the breadth of discovery. Until such time as the City moves accordingly, however, the arguments will not be addressed.

fact does not necessarily prohibit immunity from attaching. *E.g., Rini v. Zwirn,* 886 F.Supp. 270, 283–84 (E.D.N.Y.1995) (holding that executive and town legislative aides are entitled to immunity despite lack of membership on legislative body given active participation in legislative process); *Cf. Harhay v. Blanchette,* 160 F.Supp.2d 306, 312 n. 4 (D.Conn.2001) (defendant superintendent of school board "is not a member of any legislative body but strictly an administrator" and so cannot assert defense). Instead, the analysis must focus on the actions taken by the members. In doing so, the Court is mindful of the strictures of Rule 12(b)(6) and is limited to the allegations in the Complaint.

Brennan alleges that the defendants prepared legislation for the Council that would abolish her position and create a new title to which Straub would appoint a "guy" of his choosing. (Compl. ¶ 20.) Further, she alleged that the Council adopted the ordinance, resulting in the elimination of her position and the creation of the new title in its stead. (Compl.¶ 23.) Although the defendants allege that the legislation they proposed was not limited to the above actions, and in fact involved a larger effort to reorganize the Department as well as the elimination of other positions, (Defs.' Mem. at 6 n. 4), such allegations are not included in the Complaint. Nor did the defendants attach any documents of which judicial notice could be taken in support of such allegations. As alleged in the Complaint, the action complained of was the elimination of a single position and as such was more administrative in nature than legislative, and thus immunity will not attach. *See Harhay,* 160 F.Supp.2d at 313 (refusing to grant immunity because action was "directed at one specific person and

[was] limited to that person's circumstances"); *Orange v. County of Suffolk,* 830 F.Supp. 701, 705 (E.D.N.Y.1993) (granting immunity and distinguishing cases cited by plaintiff in opposition to such grant because "they involve situations affecting a single worker" and "the defendant legislators in this case are alleged to have voted to abolish a series of positions").

As a result, based on the allegations, the defendants' argument regarding immunity is unavailing.

### B. Counts II and IV: First Amendment [5]

■ Counts II and IV are premised on Brennan's claims that she engaged in constitutionally protected speech when she challenged the purported pattern of sex discrimination in the City government in *Brennan I* and in her ensuing actions. The defendants argue, however, that the counts should be dismissed as the speech at issue did not involve a matter of public concern.

In order for a public employee to bring a claim under the First Amendment as a result of an adverse employment action, the expression in question must constitute "speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983). Speech pertaining to internal personnel disputes and working conditions is generally held not to involve matters of public concern. *Id.* at 147, 461 U.S. 138, 103 S.Ct. at 1690, 75 L.Ed.2d 708 ("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of

---

**5.** While the defendants argue that Brennan cannot use Title VII as the basis of her § 1983 claims in Counts II and IV, Brennan has clarified that these claims are based on purported First Amendment violations. To the extent, however, that Counts II and IV are premised on Brennan's Title VII claims, they are dismissed.

personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.").

Whether speech is protected because it addresses a matter of public concern is an issue for the court, viewing the speech in the context in which it was made. *Ezekwo v. N.Y.C. Health and Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (*citing Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7, 75 L.Ed.2d 708). "[T]he court should focus on the motive of the speaker, attempting to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Iannillo v. County of Orange*, 187 F.Supp.2d 170, 181 (S.D.N.Y.2002) (*citing Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir.1999)).

Brennan claims that her speech concerned matters of public concern because she was retaliated against for "having opposed and complained about systemic gender discrimination in the workplace" and for having testified with respect to the "pervasive gender discrimination in the workplace of the Department." Compl. ¶ 26. While such conclusory allegations may not normally be sufficient to survive a motion to dismiss when, as here, the only relief sought is personal in nature, *e.g., Saulpaugh v. Monroe Comm. Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (government employee's complaint of sexual harassment which was motivated by and related to an individual employment situation not a matter of public concern); *Ezekwo*, 940 F.2d at 781 (holding that resident's complaints about aspects of residency program that negatively affected her did not implicate matters of public concern), Brennan has asserted one very specific example of retaliation after she testified on behalf of another female employee of the Department in connection with a federal civil rights action. (Compl.¶ 14(e).) As a result, it cannot be said at this time that Brennan's complaint is solely related to matters of her own personal concern. Whether the allegations will survive a motion for summary judgment is another question for another day. Therefore, the defendants' motion to dismiss Counts II and IV is denied.

### C. *Count V: Due Process*

■ The individual defendants also moved to dismiss Count V, alleging that Brennan did not have a right to, and failed to request, a pre-termination hearing.

There is no dispute that plaintiffs must have a property interest in their former employment in order to bring a claim under the Fourteenth Amendment. *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985); *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir.1994) ("Property interests in employment ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.") (citations omitted). Here, Brennan grounds her interest in Section 75 of the New York Civil Service Law. Section 75 provides, in pertinent part, that "a person holding a position by permanent appointment in the competitive class of the classified civil service [as Brennan held] ... shall not be removed ... except for incompetency or misconduct shown after a hearing upon stated charges." N.Y.C.S.L. § 75(1)(a).

In spite of § 75, public employers are entitled to eliminate competitive civil service positions for reasons having nothing to do with discipline or job performance, such as for fiscal reasons. *E.g., Nauta v. City of Poughkeepsie*, 610 F.Supp. 980, 982 (S.D.N.Y.1985) ("Faced with the allegation of legitimate budgetary motivation, plain-

tiff has the burden of showing that there was not a *bona fide* financial reason to abolish his position, or that a financial saving was not accomplished by the elimination of the position, or that another person was hired in his place, or some other indicia of bad faith."). In order to sue for failure to obtain a hearing on allegations of bad faith, however, employees must either request a hearing, *Dwyer v. Regan*, 777 F.2d at 833, or have good cause for not doing so. *E.g., Cifarelli v. Village of Babylon*, 894 F.Supp. 614, 621 (E.D.N.Y. 1995), *aff'd* 93 F.3d 47 (2d Cir.1996) (acknowledging that plaintiff failed timely to request hearing as required by *Dwyer* but noting that notice of several hours was hardly sufficient time to make such request and that requirement would therefore be waived).

Thus the defendants argue that Brennan was terminated because her position was eliminated for budgetary concerns and that, even if she alleges that such elimination was a sham, she failed to request a hearing in a timely manner and thus now has no due process right to a hearing. There is one problem with this argument, albeit one that the defendants call a "hyper-technical distinction." (Defs.' Reply at 5.) Brennan's complaint alleges that she was fired on August 30, 2002—four days prior to the September 3 hearing at which her position was eliminated.

The defendants attempt to argue that Brennan was merely informed on August 30 that she could (or would) be terminated, effective September 2, 2002, due to the restructuring. They point to a letter dated September 4, 2002, which is referred to in the Complaint, in which Brennan was informed that she had been terminated effective September 2, 2002. The defendants have at most raised an issue of fact, particularly given the jarring circumstances of the defendants' revelations to Brennan on August 30. At the time, she was unceremoniously asked to leave the building at once and all of her Department items (identification, pass and keys) were taken from her prior to her departure on that day. She also claims that her subordinates were informed on that day that she was fired. As a result, for the purposes of this motion and drawing all inferences in Brennan's favor, it must be assumed that Brennan was fired on August 30, 2002, prior to the elimination of her position. Brennan therefore appears to have been entitled to the procedures outlined under § 75(2), and was not given adequate notice or an opportunity to be heard. Further, as in *Cifarelli*, because Brennan was given scant notice of her termination, it is inequitable to expect that she would request a hearing on the spot while she was allegedly collapsing in the office and having her belongings taken from her.

Therefore, while Brennan's job title may have been "abolished solely for purposes of efficiency," effective September 3, 2002, Brennan was apparently fired prior to this determination by the Council—a situation that begs the question of what proper cause the Department had and why Brennan was not given the requisite notice and opportunity to respond provided for in Section 75(2).

As a result, the defendants' arguments are unavailing at this time, given the strictures of Rule 12(b)(6).

### Conclusion

For the foregoing reasons, the defendants' motion is granted in part and denied in part. Counts I and III are dismissed as to all defendants but the City. Counts II and IV are dismissed inasmuch as they are premised on purported violations of Title VII.

It is so ordered.