**Joann PERKOWSKI, Plaintiff**

v.

**The STRATFORD BOARD OF EDUCATION, Defendant.**

**Civil Action No. 3:04CV2016(CFD).**

United States District Court,
D. Connecticut.

Oct. 3, 2006.

Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT, for Plaintiff.

Richard J. Buturla, Warren L. Holcomb, Berchem, Moses & Devlin, P.C., Milford, CT, for Defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

Plaintiff JoAnn Perkowski brought this action under 42 U.S.C. § 1983 against the Stratford Board of Education ("Board of Education"). Perkowski claims that she was denied due process of law when her employment with the Board of Education was terminated without notice or an opportunity to be heard. She also asserts a state law claim for breach of the alleged contractual terms of her employment. The Board of Education has moved for summary judgment. For the reasons described below, the Court grants that motion.

### I. Background [1]

Perkowski was employed as a human resources secretary by the Board of Education from May 26, 1998 to June 30, 2004. During the course of Perkowski's employment with the Board of Education, she performed her job duties adequately and was not subject to any disciplinary action. The position of human resources secretary was a nonunion position. However, according to Perkowski, the official policy of the Board of Education was to apply the provisions of the collective bargaining agreement between itself and the Stratford Association of Educational Secretaries (the "Union Contract") to nonunion administrative staff. Perkowski claims that when she was hired she was "handed a secretary contract and [was] told [she] followed the secretaries' contract with the exception of not having to pay union dues." Thus, according to Perkowski the terms and conditions of her employment were governed by the Union Contract.[2] Under the terms of the Union Contract that was in effect in June of 2004, all discharges were required to be "for just and sufficient cause." In addition, the Union Contract

---

1. The facts are taken from the parties' Local Rule 56(a) statements and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

2. However, the Court notes that Perkowski admits that she received additional benefits not available to members of the Stratford Association of Educational Secretaries.

provides procedures for arbitration of employee grievances before the Connecticut State Board of Mediation and Arbitration. According to Perkowski's deposition testimony she is "sure" that the grievance and arbitration procedure in the Union Contract applied to her as a nonunion secretary.

In December 2003, Irene Cornish was hired as the new superintendent of the Board of Education. Shortly after Cornish started working as the new superintendent, she became aware that the Stratford Public Schools faced significant financial issues. In January 2004, Cornish met with all central administrative staff, including Perkowski, and announced that due to financial difficulties facing the school system there might be reorganization and restructuring of central administrative staff which could result in some jobs being changed or eliminated. In the end, the budget for the 2004–2005 year required $1.372 million in cost reductions. At an April 14, 2004 public hearing, Cornish explained, in general terms, the ways she planned to achieve the requisite cost reductions of $1.372 million. One component of this was her intention to reorganize the business and personnel departments. Following this hearing, a budget which required such cost reductions was adopted.

In addition to other changes reflected in the budget, Perkowski's human resources secretary position and Patricia Pulaski's human resources assistant position were eliminated and the functions of those two positions were consolidated into a single newly created position that was given the title of human resources associate.[3] According to the Board of Education, this new position required skills and credentials which neither Perkowski nor Pulaski possessed and it hoped to save $87,000 as a result of this consolidation. The parties dispute how much of this savings was actually realized.

Perkowski first learned through a rumor on June 3, 2004, that her position would be eliminated. On that day, her supervisor, Denise Gagne, confirmed that Perkowski and Pulaski would be laid off as of June 30, 2004. Gagne informed Perkowski and Pulaski that their positions had been eliminated for financial reasons. She informed them that a "high tech human resources person with considerable computer skills and an associates' degree would be hired" to replace them. At that meeting, Perkowski asked about the "recall and bumping rights" that she believed she had under the Union Contract. Gagne responded that Perkowski was non-union.

On June 4, 2004, Perkowski met with Cornish. Cornish confirmed that her job position was eliminated as part of the new budget and reminded Perkowski of the January 2004 meeting at which she had suggested that job positions might be changed or eliminated. At her meeting with Cornish, Perkowski again asked about her rights under the Union Contract and was again informed that she had no such rights. On June 25, 2004, Gagne sent a letter to Perkowski confirming that her position had been eliminated from the 2005 fiscal year budget.

In her Local Rule 56(a) statement, Perkowski denies that "[a]t no time prior to the termination of her job position on June 30, 2004 did [she] either claim the elimina-

---

**3.** Pulaski filed a parallel action against the Board of Education asserting substantially the same claims. On August 15, 2006, the United States District Court in Connecticut granted summary judgment in favor of the Board of Education for substantially the same reasons as described herein. *Pulaski v. Stratford Board of Education*, No. 3:04 CV 2015, 2006 WL 2361724 (D.Conn. Aug. 15, 2006).

tion of her job for budgetary reasons was a pretext or sham or request a hearing regarding the termination of her employment." However, her deposition testimony clearly indicates that she never asked for a hearing: "Q Did you ask anyone or did you request from Superintendent Cornish or anyone else to have a hearing regarding the elimination of your job and/or your termination? A No.... Q My question was did you ever request an opportunity to be heard regarding the elimination of your job and/or your layoff? A No, I didn't request." Further, she testified that, at least before this suit was filed, she never notified the Board of Education that she was concerned that her position was eliminated for reasons other than the budget crisis: "Q Did you ever communicate to Superintendent Cornish anything to the effect that you didn't believe your job was being eliminated because of budgetary or fiscal reasons? A No.... Q Did you ever tell anyone employed by the Stratford Board of Education anything to that effect, that is that you didn't believe that the reason your job was being eliminated was due to financial reasons? A No." Further, Perkowski admits that the Board of Education was facing a budget crisis and that her position was eliminated "in an attempt to close a multi million dollar deficit." In addition, in her deposition testimony Perkowski admitted that she did not "file any grievance with the Stratford Board of Education as a result of [the] termination of [her] position [and her] resulting layoff."

## II. *Summary Judgment Standard*

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 5(c)); *accord Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548; *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir.1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R.Civ.P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. When ad-

dressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Maffucci*, 923 F.2d at 982.

### III. *Discussion*

Perkowski claims that because the Union Contract applies to her she had a property interest in her position and that as a result the Board of Education could not terminate her employment without complying with the due process requirements of the Fourteenth Amendment. In her complaint she argued that because the Board of Education failed to provide a pretermination hearing it violated those due process rights. In her memorandum in opposition to the Board of Education's motion for summary judgment Perkowski also argues that her due process rights were violated by the Board of Education's failure to provide a post-termination hearing. The Board of Education admits for the purposes of this motion that Perkowski had a property interest in her job, but argues that Perkowski was given all the process she was due.

### A. Pretermination Hearing

■ Perkowski's due process complaint about the failure to provide her with a pretermination hearing is governed by *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985) *modified*, 793 F.2d 457 (2d Cir. 1986).[4] In that case, the employer

claimed, as here, that the plaintiff's job had been eliminated due to budgetary constraints. The plaintiff alleged that in fact his job had been "reconstituted" in the hands of a different employee, and that the employer had used the "budget constraints" rationale as a pretext to eliminate him. *Id.* at 828. *Relying on Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Second Circuit observed initially that "as a general matter the removal of a tenured employee from his position requires some kind of preremoval hearing" and that a state employer could not avoid its obligation to provide a hearing by engaging in a sham or pretextual elimination of the employee's position. *Dwyer*, 777 F.2d at 831. However, the Second Circuit was not persuaded that a state employer has an obligation to "routinely" provide hearings whenever it eliminates or consolidates workforce positions. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). Instead, a pretermination hearing is required only when, first, the employee alleges that the reduction in force was pretextual and second, the employee demonstrates that she timely requested a pretermination hearing. Thus, the court held as follows:

A state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions, and we are not persuaded that the state must routinely provide hearings for employees whose positions are tar-

---

4. Perkowski argues that *Dwyer* is inapposite because it governs only circumstances where the state has "conducted layoffs pursuant to a substantial reduction in its work force or when it has abolished or consolidated positions to make its operations more efficient."

Perkowski further argues that this is not such a case because only five employees were laid off. However, in *Dwyer* the plaintiff alleged that he was the *only* person laid off. Furthermore, Perkowski admits that her position was consolidated with another.

geted for elimination whenever the state adopts such efficiency measures. Where, however, the state has a due process obligation to provide a hearing prior to removing an employee from an ongoing position, and an employee who has received notice that his position is to be eliminated *protests that notice and contends that it is but a sham and pretext for the deprivation of his property right*, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.

. . .

We do not believe the requirements that a pretermination hearing on the claim of sham, be provided *if one is requested*, . . . will detract from the state's ability to adopt bona fide efficiency measures. *Dwyer*, 777 F.2d at 833 (emphasis added).

The court in *Dwyer* remanded the case to the district court because it was unclear whether Mr. Dwyer had requested a pretermination hearing. *See id.* at 834. The court emphasized that since "we have rejected here the proposition that a state must routinely provide pretermination hearings for employees whose positions are targeted for elimination and have held only that it must provide such hearings when requested, we conclude that *if Dwyer cannot show that he made a timely request for a pretermination hearing, he is not entitled to recover for the failure to receive such a hearing.*" *Id.* at 833 (emphasis added). *See also Dworkin v. City of N.Y.*, No. 95 Civ. 10261, 1996 WL 673815, at *3 (S.D.N.Y. Nov. 20, 1996) (holding that even if plaintiff human resources manager was constitutionally entitled to a pretermination hearing, any need for the hearing was obviated because "it is clear that plaintiff never requested such a hearing, as required in *Dwyer*"); *id.* ("It is clear that the employee bears the responsibility to request such a pretermination hearing."); *cf. Cifarelli v. Vill. of Babylon*, 894 F.Supp. 614, 621 (E.D.N.Y. 1995), *aff'd* 93 F.3d 47 ("In *Dwyer*, the Second Circuit unmistakably obligated the employee to initiate whatever procedural mechanisms the state or locality may have in place, by requiring him to request a hearing prior to termination," but ultimately excused plaintiff building inspector from requirement because he was provided only a few hours to make request).

■ Here, as in *Dwyer*, Perkowski now asserts that her termination was pretextual. However, Perkowski admits that the Board of Education was facing a budget crisis and that her position was eliminated "in an attempt to close a multi million dollar deficit." Perkowski's "pretext" argument seems to proceed along two lines: First, Perkowski claims that the cost savings the Board of Education hoped to achieve by eliminating her position were overstated. However, given Perkowski's admission that the fiscal crisis was genuine and that her position was eliminated in an attempt to resolve the crisis, this is not sufficient to raise an issue of material fact. Second, Perkowski may be arguing that, even though some staffing cuts were required by the fiscal crisis, her position was targeted for individual reasons and not because of legitimate efficiency concerns. Perkowski points to the fact that only five out of over one thousand employees were laid off. However, "[t]o show that the state's fiscal difficulties were a pretext for other motives, the plaintiff would have to present evidence that she was not 'expendable' at the time of her termination." *Bapat v. Connecticut Dept. of Health Services*, 815 F.Supp. 525, 538 (D.Conn.1992) (requiring plaintiff to "establish that she was 'targeted' for termination by the defendants" to survive motion for judgment).

*See also, Cifarelli v. Village of Babylon,* 93 F.3d 47, 50 (2d Cir.1996) (affirming grant of summary judgment where plaintiff failed to raise issue of material fact about whether termination was for economic reasons). Furthermore, even if Perkowski had presented evidence suggesting pretext the Board of Education would still be entitled to summary judgment because there is also no evidence that Perkowski ever requested a hearing.[5]

While Perkowski's memorandum in opposition to the defendant's motion for summary judgment claims that Perkowski "did request a hearing regarding her termination," the memorandum is merely referring to the June 4, 2004 meeting between Perkowski and Cornish. As described above, in her deposition testimony, Perkowski clearly admitted that she never requested a hearing or informed the Board of Education that she was concerned that the fiscal reasons for her termination were pretextual.[6] As the United States District Court in Connecticut noted in Pulaski's case against the Board of Education: "While it is undoubtedly true that an employee need not use any 'magic words' in requesting a pretermination hearing, under *Dwyer* the employee surely cannot complain of the failure to provide a preter-

mination hearing unless the employee sought one in some way." *Pulaski v. Stratford Board of Education,* No. 04 Civ. 2015, 2006 WL 2361724, at *4 (D.Conn. Aug. 15, 2006).

As the Second Circuit stated in *Dwyer,* if "an employee who has received notice that his position is to be eliminated protests that notice and contends that it is but a sham and pretext . . ., the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment." *Dwyer,* 777 F.2d at 833 (emphasis added). Here, the Board of Education can not be faulted for failing to give Perkowski a pretermination hearing on a claim of pretext when she never protested the notice of her termination,[7] never told Cornish or anyone else that the stated reason for her termination was a sham and pretext and never asked for a pretermination hearing of any kind. Accordingly, following *Dwyer,* Perkowski is not entitled to recover under the Due Process Clause for the Board of Education's failure to provide her a pretermination hearing.

**B. Posttermination Hearing**

 *Dwyer* also controls the claim Perkowski now raises in her opposition to the

---

5. The Court notes that if its summary judgment ruling were based entirely on Perkowski's failure to raise a genuine issue of material fact about whether the Board of Education's fiscal difficulties were a pretext Perkowski might be entitled to nominal damages. *See Dwyer v. Regan,* 777 F.2d at 834 ("If Regan can show that Dwyer's employment would have been terminated even after a proper pretermination hearing, Dwyer will nonetheless be entitled to recover nominal damages."); *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Cifarelli v. Village of Babylon,* 93 F.3d 47 at 50. However, because the Court also finds that Perkowski failed to request a hearing it need not consider nominal damages.

6. In her meetings with Cornish and Gagne, Perkowski did ask what her "rights" were, but in a context that made clear that she was referring to the bumping and recall rights referred to by the Union Contract. For example, "Q When you said what your rights were, you were inquiring as to your rights to another job? A Correct."

7. In her memorandum in opposition to the defendant's motion for summary judgment, Perkowski claims that she "was not provided with any advance notice of the decision [to terminate her] or the reasons underlying it." However, in her deposition testimony Perkowski admits that, on June 3, 2004, she was informed that her position would be terminated on June 30, 2004.

motion for summary judgment that she was unconstitutionally deprived of a post-termination hearing. *See Dwyer,* 777 F.2d at 833–35. As the Second Circuit explained, even when a state employee who has a protected property interest in her job fails to request a pretermination hearing, she is still entitled to a posttermination hearing. *Id.* at 834 ("[E]ven if Dwyer did not timely demand a pretermination hearing, he was nevertheless entitled to a posttermination hearing *on his contention* that he was impermissibly deprived of his property right.") (emphasis added). Indeed, the Dwyer court observed that "[t]he nature of a claim of sham is such that a posttermination hearing will likely be more valuable to the claimant than a pretermination hearing, since an after-the-fact transfer of the claimant's duties to a new employee would provide evidence in support of the claim of sham." *Id.* Of course, this presupposes that the employee has raised the issue of pretext, which is, after all, what triggers the employer's obligation to hold a hearing when jobs are eliminated in the context of a reorganization.

In addition, the Second Circuit in *Dwyer* went on to hold that the availability of state court proceedings will satisfy the Due Process Clause's posttermination hearing requirement unless the employee can show that "he could not have obtained a full and fair posttermination adjudication of his claims in the state courts." *Id.* The Second Circuit thus instructed that "[i]f no pretermination hearing was requested and if a state court proceeding would have been adequate, the complaint should be dismissed." *Id.* Moreover, the onus of initiating any posttermination proceeding is with the employee: "even if state court proceedings are shown to have been inadequate, if [plaintiff] made no request for either a pretermination hearing or an administrative posttermination hearing, the complaint should be dismissed." *Id.* at 834–35. On the undisputed record, it is clear that Perkowski cannot satisfy any of the requirements that *Dwyer* imposed on employees seeking recovery for failure to provide a posttermination hearing.

■ Perkowski asserts in her complaint, brief and deposition testimony that, even though she was a non-union employee, she was entitled to avail herself of the state administrative procedures set forth in the Union Contract [8] For example, in her deposition testimony Perkowski was asked "Is it your understanding that the grievance and arbitration procedure applied to you as a nonunion secretary?" and she responded "I'm sure it did."

Therefore, Perkowski admits that she knew that the Union Contract contained a grievance procedure, which she failed to

---

8. *See, e.g.,* Complaint [doc. # 1] ¶ 15 ("[I]t has been the official and long term policy of the defendant . . . to accord the plaintiff, and similarly situated non-union personnel, the same privileges and benefits that are enjoyed by members of the [union]."); *id.* ¶ 27 ("[T]he [defendant] was . . . constitutionally bound to provide the plaintiff with notice and a hearing pursuant to the terms of the collective bargaining agreement between the defendant . . . and [the union]."); Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 26] at 2 (noting that plaintiff was told that "the terms and conditions of her employment would be governed by the collective bargaining agreement between the Stratford Board of Education and the Stratford Association of Educational Secretaries"). The statements in her pleadings (which are not set forth in the manner of alternative pleading) constitute judicial admissions. *See, e.g., Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir.1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."); *Belle-fonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

employ. The Union Contract provides for a detailed grievance procedure, and state law provides for a detailed hearing process. *See* Conn. Gen.Stat. §§ 31–97, 52–413. Perkowski makes no claim that this state-administered grievance procedure is inadequate or otherwise fails to satisfy the requirements of the Due Process Clause. *See, e.g., Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 213 (2d Cir.2003) ("Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process."); *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 102 (1st Cir.2002) ("[T]he full arbitration hearing afforded by the collective-bargaining agreement was more than sufficient to satisfy" due process).

Instead, Perkowski asserts that under Connecticut law, the services of the Connecticut Board of Mediation and Arbitration ("State Mediation Board")—the entity that is charged with arbitrating employee disputes under the collective bargaining agreement—are simply not available when the employee is a non-union employee. Perkowski argues that the State Mediation Board interprets its jurisdiction as limited to arbitrating disputes between employers and unions. *See* Conn. Agencies Regs. § 31–91–22 ("The arbitration services of the board are available to employers and employee organizations.").

On July 12, 2006, the State Mediation Board gave its opinion on its jurisdiction in an assumed factual situation that was in conformity with Perkowski's claims at bar and that was jointly drafted by Perkowski's co-worker Pulaski and the Board of Education. *See Pulaski v. Stratford Board of Education,* 2006 WL 2361724 at * 5. The July 12 response included an opinion prepared by the Connecticut Attorney General's Office. *Id.* That opinion states that if the School Board had agreed with its non-union personnel to extend to them the provisions of the Union Contract—as Perkowski asserts in this case—the State Mediation Board would have jurisdiction to entertain a dispute between a non-union employee and the School Board. *Id.* The Attorney General based his opinion upon the language of Connecticut General Statutes § 31–97(a), bolstered by the application of § 7–472. *Id.;* Conn. Gen. Stats. § 31–97(a) ("Whenever a grievance or dispute arises between an employer and his employees, the parties may submit the same directly to [the State Mediation Board].").

No Connecticut court has ruled on the issue of whether the State Mediation Board has jurisdiction to arbitrate between a municipal employer and an individual, non-union employee. However, the United States District Court in Connecticut has found that the State Mediation Board has jurisdiction in such cases. *Pulaski* at 2006 WL 2361724, *7, citing *Board of Police Comm'rs. of the City of New Haven v. Maher,* 171 Conn. 613, 370 A.2d 1076 (1976) (holding that City of New Haven and police union could extend by contract jurisdiction of State Mediation Board to cover a type of arbitration not otherwise authorized by statute); *Danbury Rubber Co. v. Local 402, United Rubber, Cork, Linoleum and Plastic Workers of America, C.I.O.,* 145 Conn. 53, 138 A.2d 783 (1958); *City of Milford v. Local 1566, Council 4, AFSCME,* 200 Conn. 91, 101, 510 A.2d 177 (1986) ("[t]he [State Mediation Board] members are independently authorized under General Statutes § § 31–91 through 31–100 to arbitrate labor disputes and render awards," and failure of some board members to take oath in accordance with another statutory directive dealing with arbitration did not rob the State Mediation Board of its jurisdiction in the affected matters).

Therefore, on the basis of the admissions in her pleadings, testimony at her deposition, and the opinions of the State Mediation Board and Attorney General as recited by the United States District Court in *Pulaski,* as well as the analysis in *Pulaski* and its own analysis of Connecticut law, the Court concludes that Perkowski understood at the time of her termination that she could avail herself of the grievance provisions of the collective bargaining agreement if she wished to dispute her termination and that her status as a non-union employee would not have deprived the State Mediation Board of jurisdiction to hear her case if, as she asserts, the School Board had extended the Union Contract to non-union employees. Nevertheless, Perkowski never sought to avail herself of the posttermination administrative procedures that she asserts were available to her. The Board of Education cannot be liable for failing to make available to Perkowski posttermination procedures that she never sought to invoke. Accordingly, as *Dwyer* instructs, because Perkowski "made no request for either a pretermination hearing or an administrative posttermination hearing, the complaint should be dismissed." *Dwyer,* 777 F.2d at 834–35.

### C. State Law Claims

■ As a result of the Court's rulings on Perkowski's due process claim, she is left with a single claim, Count Two, which is a state-law breach of contract claim. While it is true that the Court may exercise supplemental jurisdiction over Perkowski's state-law claim under 28 U.S.C. § 1367, the Second Circuit has advised district courts that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to-ward declining to exercise jurisdiction over the remaining state-law claims.' " *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). This is the "usual case" envisioned in *Valencia.* All that remains in this case is a single state law claim. Therefore, in the interests of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Count Two.

### IV. *Conclusion*

Defendant's motion for summary judgment [**Doc. # 18**] is granted.