Michael J. McMULLEN, Plaintiff

v.

Rudolph ROSSMY, Diane Wheelock and the Town of Vernon, Defendants.

No. 3:06–cv–263 (CFD).

United States District Court, D. Connecticut.

Feb. 12, 2009.

Thomas S. O'Grady, Somers, CT, for Plaintiff.

David S. Monastersky, Martha Anne Shaw, Howd & Ludorf, Hartford, CT, Harold R. Cummings, Cummings, Lanza & Purnhagen, South Windsor, CT, Susan Boyan, Courtney Boyan & Foran, Vernon, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

CHRISTOPHER F. DRONEY, District Judge.

This action arises out of the employment relationship between the town of Vernon and Michael McMullen, the former Captain of the Vernon Police Department. McMullen alleges wrongful discharge, breach of his employment contract, and deprivation of his due process and equal protection rights under the Federal and Connecticut constitutions [1] arising from his termination, prior claims for additional training and equipment, and the town's failure to rehire him. These claims are brought against the town as well as against Diane Wheelock, its former mayor.[2] For the following reasons, the motion for summary judgment is granted.

## I. Background [3]

The town of Vernon is governed by a Charter which classifies administrative officers such as Captain of Police as "qualified officers" (those who must take a competitive examination before appointment) within the "classified service" (i.e. protected by the Charter's merit system). See Charter of the Town of Vernon, Connecticut at 33–34. The merit system provisions include a provision that "no employee in the classified service of the Town may be terminated except for cause or because of reduction in force due to necessary economics." [4]

McMullen was hired as Captain of Police by Vernon on March 15, 1999, following a career as a police officer for the town of Enfield. McMullen was therefore subject to termination only for cause or due to a "reduction in force due to necessary economics." [5]

1. The complaint does not specify the nature of all of these claimed violations. However, the Court will consider them as specified in the briefs of the parties.

2. The complaint also alleges constitutional conspiracy claims which the plaintiff is not now pursuing. The plaintiff also has elected not to pursue any of his claims against defendant Rudolph Rossmy. Finally, at ¶ 95d of the complaint the plaintiff asserted a claim concerning a settlement agreement with another employee, but that claim is not pursued. Accordingly, summary judgment as to these claims is granted.

3. The facts related herein are taken from the parties' briefs, affidavits, depositions, and Rule 56(a) statements of fact and are undisputed unless otherwise noted.

4. The Charter also exempts from the merit system provisions "the officers listed in Sections 3 and 5 of Chapter XI of this Charter and such other department head positions the Town Council may create." These exempted officers include the Police Chief, the Fire Chief, and others, but do not include the Captain of Police. See Charter of the Town of Vernon, Connecticut, at 14–16.

5. The Captain of Police serves under the Police Chief, who is a "qualified officer," but outside of the classified service.

### (a) Denial of Salary Increase

In November 2001, McMullen requested an increase of his salary because of the "compression" between the Captain's salary and the Lieutenant's salary, and also because although McMullen was already at the top step within his pay grade, other police officers were earning higher salaries, due to their eligibility for overtime pay. The Town Administrator, Laurence Shaffer, determined after talking with Police Chief Rudolph Rossmy that the request was not justified, and it was denied.[6]

### (b) Refusal to Replace McMullen's Vehicle

During his employment by the town, McMullen was provided with an unmarked police vehicle. According to Police Department policy,[7] vehicles were to be replaced when they had accumulated 80,000 miles, and McMullen first requested that his vehicle be replaced in November, 2001, when his vehicle had accumulated close to 80,000 miles. Rossmy brought McMullen's request to the town's Capital Improvement Committee, but the request was denied, as were McMullen's subsequent requests. McMullen eventually accumulated in excess of 100,000 miles on the vehicle.

### (c) Failure to Provide Training

While Police Captain, McMullen requested additional command school training. In 2000, Rossmy and McMullen completed an application for McMullen to attend the FBI national Academy Program, but no slot in the training program was available during McMullen's employment. The town did not approve an additional budget for other command school training despite requests by Rossmy. McMullen claims that other supervisors in the police department did receive funding for command training during the time that he was denied such funding; however, McMullen had already received the types of training provided to the other police department supervisors, during his time working for the Enfield police department.[8]

6. The town's Personnel Rules and Regulations applicable to a request for reclassification of a position provide that a position may be reclassified "[w]henever the duties and responsibilities of an existing position are so changed that the position becomes one of a different class from that to which it is allocated.... Any permanent employee who considers his/her position improperly classified shall submit a reclassification request to his/her Department Head. The Department Head shall review the request and submit it with his/her recommendation to the Town Administrator. The Town Administrator shall study the position and determine if reclassification is justified. A rejection of a reclassification request may be appealed under the Grievance Procedure (Section 12)." The town personnel rules also provide in the "Foreward" that "[t]he rules are not intended to be all-inclusive and inflexible" and that collective bargaining agreements may overlap with and supersede the Town's rules.

7. The policy may be an "official" or an "unofficial" policy. Rossmy Deposition, Dec. 8, 2006, at 104. The policy appears to be applied to "line cruisers" (e.g. marked police vehicles) rather than to administrative vehicles such as the unmarked vehicle driven by McMullen.

8. The town's Personnel Rules and Regulations applicable to this request include a "General Policy" (Section 1.1) that "every effort shall be made to train employees to assume high quality performance and to promote career development." The regulations specific to "Training and Career Development" (Section 10.0) provide that "The Town recognizes that it is in the interest of the Town to provide training and career development opportunities for employees. Such opportunities may include formal educational programs, as well as specialized workshops and seminars relating to careers. The Town Administrator may authorize the attendance of employees at such programs, either during or after normal working hours, and may authorize the expenditure of Town funds for employee attendance at such programs."

#### (d) Termination

As a result of severe revenue shortfalls for the 2003–2004 fiscal year, funding for several positions was removed from the proposed town budget. Some unfilled positions remained vacant, and some existing employees were laid off. McMullen was laid off by Mayor Wheelock in April, 2003 due to a reduction by the Vernon Town Council of $100,000 in the Police Department portion of the budget. He was informed by Chief Rossmy in a conversation on April 10, 2003 and by formal written notice on June 11, 2003 that the termination would be effective as of July 1, 2003. McMullen then filed a grievance by letter dated July 8, 2003 to Shaffer, the Town Administrator. In this letter, he alleged that he had been discriminated against by a pattern of conduct prevailing since his hire in March 1999 (and consisting of the denials of his requests for training, a new vehicle, and salary reconsideration, and finally his termination). McMullen stated that possible reasons for the discriminatory actions were (1) his decision to live out of state; (2) his age (fifty-two), (3) the fact that he was one year away from being vested in his pension at the time he was terminated.

By letter dated July 14, 2003, Shaffer responded that staffing decisions such as McMullen's layoff for economic reasons are not subject to the grievance procedure set forth in the town regulations. During his deposition, Shaffer also stated that the grievance procedure requires the employee to file the grievance while still employed (Shaffer Deposition Transcript at 71–2), and McMullen asserts that the fact that his grievance was untimely filed was another reason that he was denied access to the grievance process.[9]

#### (e) Failure to Rehire

In 2005, plans were made to readvertise the position of Police Captain. According to the defendants, funding for the position would be then available as a result of allowing the position of a retiring Lieutenant to remain unfilled. The town used a third party to assess and rank applicants for the revised position. Following the ranking of the candidates, the top three candidates for the position were interviewed. McMullen ranked fourth and was not interviewed. One of the top three candidates was selected for the position of Captain, but he was removed from the list and appointed as Police Chief instead, when the Police Chief retired.[10] Neither McMullen nor any other candidate was added to the list to replace him. Instead, one of the remaining candidates on the list was offered the Captain's position in March, 2006.[11]

9. Section 13.2 of the town regulations dictates the procedures for resolving a complaint alleging discriminatory conduct; this is a distinct section from the dealing with grievances. A complaint of discrimination filed under the provisions of Section 13.2 gives the complainant a right to an investigation of his complaint, followed by a hearing if timely requested.

10. Shaffer Deposition, Jan. 30, 2007, at 23–25; Oral arguments of February 5, 2009.

11. The town's Personnel Rules and Regulations include a "General Policy" that "appointments and promotions shall be based on competitive examinations and/or evaluations." The regulations regarding "Recruitment, Selection and Appointment of Employees" (Section 8.1) provide that the "Town Administrator, after conferring with the department head, shall recommend to the Mayor whether a vacant position shall be filled by open competitive examination, competitive promotional examination, transfer, or demotion. The Mayor shall approve the method and approximate date of appointment." Section 8.2(A) provides in part that "[a]ll appointments to positions in the classified service of the Town shall be made according to merit and fitness to be ascertained as far as possible by open competitive examinations." Section 8.2(I) provides for the consideration of the "certification list" of all candidates who have passed the assessment and ranking

**(f) Inadequacy of Town Rules and Procedures**

In addition to alleging violations of his rights resulting from the above-described conduct, McMullen also argues that the town's Personnel Rules and Regulations are insufficient under the Charter in that (1) the Rules fail to articulate a policy or procedure for layoffs of qualified officers within the classified service, such as the Captain of Police, and (2) there is no grievance procedure available to wrongfully-terminated employees, both deficiencies allegedly creating violations of McMullen's right to procedural due process.

## II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir.2000); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.

*Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## III. Discussion

### A. Due Process Claims

The issue of whether McMullen was deprived of any due process rights depends on (1) whether, within the meaning of the Due Process Clause, McMullen had a "property interest" in a benefit that was entitled to constitutional protection at the time he was deprived of the benefit, and (2) whether due process required a hearing prior to or after the deprivation of the property interest. *See, e.g., Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985) *modified*, 793 F.2d 457 (2d Cir.1986); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995) (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211–12 (2d Cir.1988),

---

phase, and requires the Mayor to consider the "three persons having the highest ratings on the certification list for one (1) vacancy. For each additional vacancy, one additional name, in descending order on the list, shall be considered. With the approval of the Mayor, a certification list with less than three (3) names may be used for appointment; or the position will be re-advertised."

*Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Property interests are not created by the Constitution; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Dwyer,* 777 F.2d at 829 (citing *Cleveland Board of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)) (internal quotation marks omitted).

The "property interests" McMullen has alleged are those in his position as Captain, a raise, a new vehicle, training, and automatic recall or rehire into the revived Captain's position.

### 1. No Property Interest in Requested Benefits

■ As to McMullen's requests for a raise, a new vehicle, training, and rehire into the position of Captain, McMullen had no property interest in any of these benefits. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). McMullen is not entitled to the benefits he requested because the language of the town's regulations does not mandate that any of these benefits be provided, but rather states that training "may" be provided, and that salary reclassification requests may be approved or denied by the Town Administrator. As for the vehicle request, the Police Department's policies are subject to the rules and regulations of the town, including the budget appropriations process which is subject to the discretionary decisions of the Town Council. Even assuming the Police Department vehicle replacement policy was an official one and that the policy applied to the type of vehicle driven by McMullen, he cannot assert a property right based on that policy absent a contractual guarantee or a town regulation or Charter provision that guarantees vehicle replacement, and he has alleged no such regulation or ordinance. Similarly, McMullen can cite no town regulation or ordinance giving him the right to be automatically "recalled" or rehired into his old position, for which he was considered on equal footing with other candidates whom the town found to be preferable hires through its competitive hiring process. *See, e.g., Ezekwo v. NYC Health & Hosps. Corp.,* 940 F.2d 775, 782 (2d Cir.1991) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.") (quoting *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). *See also Nishitani v. United States,* 42 Fed.Cl. 733, 739 (Fed.Cl. 1999) (claimed interest in a six-week training course did not rise to the level of a property interest for purposes of due process analysis); *Davenport v. University of Arkansas Bd. of Trustees,* 553 F.3d 1110, 1114 (8th Cir.2009) ("A property interest in a promotion cannot arise from unilateral expectations, but instead, an individual must have a legitimate claim of entitlement to the promotion."). Accordingly, the Court finds that McMullen had no property interest in any of these requested benefits.

### 2. Limited Property Right in a Post–Termination Hearing

■ McMullen did have a property interest in his position as Police Captain by virtue of the town Charter's requirement that "no employee in the classified service of the Town may be terminated except for cause or because of reduction in force due to necessary economics." However, this property right is subject to the limitations

articulated by the Second Circuit in *Dwyer v. Regan*, 777 F.2d 825 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986), and *Perkowski v. Stratford Board of Educ.*, 455 F.Supp.2d 91 (D.Conn.2006). Those cases make clear that a pretermination hearing is required only when, first, the employee alleges that a reduction in force was pretextual and second, the employee demonstrates that he timely requested a pretermination hearing. *Perkowski*, 455 F.Supp.2d at 95. Absent a timely allegation of pretext and request for hearing, however, the employee is still entitled to a post-termination hearing, should he request one. *Id.* at 98.

McMullen has not raised any genuine issue of material fact as to whether he ever requested such a hearing. The record is clear that he did not. He admits that following his termination, he never complained to any official of the town that he believed his layoff was not for legitimate reasons, and that he never sought to address the Town Council concerning his layoff. McMullen Deposition at 181; Plaintiff's Local Rule 56(a)2 Statement at ¶¶ 126–128. The Court finds that although the grievance letter McMullen submitted to Shaffer alleged that his termination was pretextual in addition to raising several other complaints, the letter is entitled "Grievance" and clearly seeks redress under the grievance procedures under Section 11 (which were unavailable to him, as he had already been terminated). The letter does not request a hearing, nor did it invoke Section 13.2 of the regulations, concerning discrimination. McMullen has also admitted that he is not claiming age or religious discrimination in the instant lawsuit. *Id.* at 181–82. Accordingly, the Court finds that McMullen only had a right to a post-termination hearing, and that because he never requested such a hearing, no violation of his procedural due process rights has occurred.

### 3. No Standing to Raise Claim as to Town Procedures

■ McMullen claims that his due process rights were violated by the failure of the town to implement procedures for layoff of qualified officers within the classified service. However, as McMullen has not requested a hearing with the Town Council on this or any of his other due process claims, the Court finds that no due process violation has occurred. *Cf. Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir.2003) ("While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist. The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies. Therefore, we do not require a plaintiff to pursue those remedies in order to challenge their adequacy, but likewise we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate.")

### 4. No Substantive Due Process Violation

■ To succeed on his claim for a substantive due process violation against the town, McMullen must show that the town's policies or customs were "arbitrary, conscience-shocking, or oppressive in a constitutional sense," and not merely "incorrect or ill-advised." *Zandhri v. Dortenzio*, 228 F.Supp.2d 167, 178 (D.Conn.2002) (citing *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995), *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) ("Substantive due process is an outer limit on the legitimacy of governmental action.... Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a

gross abuse of governmental authority.")). The Court finds that McMullen has not raised a genuine issue of material fact that the alleged conduct by employees of the town was so outrageous as to shock the conscience or constitute a gross abuse of governmental authority. Accordingly, summary judgment is granted as to the substantive due process claims.

### B. Equal Protection Claims

█ McMullen asserts his equal protection claims using the "class-of-one" theory. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The Supreme Court recently held that a class-of-one equal protection claim may not be brought against a public employer. *Engquist v. Oregon Dep't of Agric.,* — U.S. —, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Accordingly, summary judgment is granted as to the equal protection claims.

### C. State Constitutional and Tort Claims

As to the claims raised under the Connecticut constitution, as well as the claims for breach of contract and wrongful termination, the Court declines to exercise jurisdiction over these claims, as none of the federal claims survive the motion for summary judgment.[12]

### IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment [Dkt. # 29] is GRANTED. The Clerk is directed to close the case.

---

12. Because the motion for summary judgment is granted for the reasons articulated above, the Court need not reach the issues of qualified immunity as to defendant Wheelock

or the scope of municipal liability under *Monell v. Dep't. of Soc. Svcs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).